PEOPLE *v.* ELDRIDGE

1. CRIMINAL LAW—TRIAL—CHANGE OF VENUE—DISCRETION.

Trial court's denial of defendant's motion for change of venue of his trial for statutory rape *held*, not an abuse of discretion where an examination of newspaper accounts of the case revealed only objective reporting, the trial judge conducted a careful *voir dire* examination, and the defense expressed satisfaction with the jury before exhausting all its peremptory challenges.

2. RAPE—STATUTORY RAPE—INFORMATION—DATE OF OFFENSE—EVIDENCE—INSTRUCTIONS TO JURY.

Trial court's refusal of defendant's request that the jury be restricted in its deliberations to the date of September 28 *held*, proper where the information charged that defendant committed statutory rape "on or about September 28, 1965", and the complainant testified that the offense occurred on September 28 "or a week before that" (MCLA § 750.520).

3. CRIMINAL LAW—WITNESSES—RES GESTAE WITNESSES—IMPEACHMENT.

The people may impeach a witness whom they were obligated to call because he was a *res gestae* witness (CL 1948, § 767.40a).

4. WITNESSES—IMPEACHMENT—CONVICTION OF CRIME.

Conviction of crime may be shown for the purpose for drawing into question the credibility of a witness (CLS 1961, § 600-.2158).

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 53 Am Jur, Trials § 13.
     21 Am Jur 2d, Criminal Law §§ 427, 432.
[2] 41 Am Jur 2d, Indictments and Informations § 119.
[3, 6] 58 Am Jur, Witnesses §§ 633, 795.
[4] 58 Am Jur, Witnesses § 734.
[5] 58 Am Jur, Witnesses § 745.
[7] 42 Am Jur, Prosecuting Attorneys § 20.

5. WITNESSES—IMPEACHMENT—CONVICTION OF CRIME—APPEAL.

The fact that a witness was convicted of a crime may be brought out in order to impeach his credibility even though there is a motion for new trial pending in his case or the conviction is being reviewed by an appellate court (CLS 1961, § 600.2158).

6. WITNESSES — IMPEACHMENT — PRIOR CONVICTIONS — PREJUDICIAL EFFECT.

Evidential material having a legitimate probative value should be excluded if it produces an unfair prejudice over and above its legitimate effect; therefore the trial court committed reversible error when it allowed the prosecution in a statutory rape case to impeach its own *res gestae* witness by bringing out the fact that he had been convicted of taking indecent liberties with a female child where the witness was convicted on the testimony of the same complaining witness who was the complaining witness in the rape case and the offenses of the *res gestae* witness and the defendant charged with rape allegedly occurred at the same time and at the same place (MCLA §§ 750.336, 750.520).

7. RAPE—STATUTORY RAPE—EVIDENCE—GUILTY PLEAS BY OTHERS—REFERENCE BY PROSECUTION.

Reference by prosecution during trial of defendant for statutory rape to the fact that other men accused by the same complaining witness of sexual offenses had entered guilty pleas to charges against them was improper and prejudicial to defendant, and was grounds for a new trial (MCLA § 750.520).

Appeal from Kalamazoo, David Anderson, Jr., J., presiding. Submitted Division 3 May 7, 1969, at Grand Rapids. (Docket No. 4,367.) Decided July 3, 1969. Rehearing denied August 12, 1969. Leave to appeal denied March 26, 1970. See 383 Mich 775.

Larry S. Eldridge was convicted of statutory rape. Defendant appeals. Reversed and remanded.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Donald A. Burge,* Prosecuting Attorney, and *H. Michael Dwan,* Assistant Prosecuting Attorney, for the people.

*Charles A. Bellows* of Illinois (*Charles C. Wickett,* of counsel), for defendant.

BEFORE: J. H. Gillis, P. J., and R. B. Burns and V. J. Brennan, JJ.

J. H. Gillis, P. J. This is a companion case to *People* v. *Brocato* (1969), 17 Mich App 277. Based on the same account of events for which Justin Brocato was convicted of taking indecent liberties with the complainant,[1] defendant was convicted of statutory rape.[2] Several of the issues raised in this appeal are akin to those raised in *Brocato.*

Defendant initially urges that the trial court erred in refusing to grant a change of venue. Defendant's motion for change of venue alleged that news media coverage of this case and the pleas of guilty and convictions of others likewise accused of sexual offenses by the complainant deprived defendant of a fair and impartial jury trial.

Defendant supported his motion for change of venue by a collection of newspaper articles. A review of those news accounts reveals only objective reporting. The articles were not sensational or inflammatory. In addition, defense counsel alleged that inflammatory television coverage made impossible the impaneling of an unbiased jury. However, this assertion, reiterated on oral argument, is without support in the record. Based on the record presented, there has been no showing that pretrial publicity unduly prejudiced defendant's right to trial by impartial jury. See *People* v. *Freeman*

---

[1] CLS 1961, § 750.336 (Stat Ann 1954 Rev § 28.568).

[2] CLS 1961, § 750.520 (Stat Ann 1954 Rev § 28.788).

(1969), 16 Mich App 63. Furthermore, the trial judge conducted a careful *voir dire* examination, at the conclusion of which the defense expressed satisfaction with the jury before exhausting peremptory challenges. See *People* v. *Fitzsimmons* (1914), 183 Mich 284. On the record before us, we cannot say that the denial of the defendant's motion for change of venue was an abuse of discretion. *People* v. *Swift* (1912), 172 Mich 473; *People* v. *Jenkins* (1968), 10 Mich App 257.

In the *Brocato Case,* the issue of whether the court should have ordered a change of venue was not raised. We commented on the issue, however, because the record indicated that the case created a sensation in that area and was a choice subject of public gossip to many in Kalamazoo. It appeared to the opinion writer that a retrial would serve only to increase the existing news coverage on the subject and that the prejudice from such widespread publicity to defendant's right to a fair trial might well be considered by the court on retrial.

The information charged that defendant committed the alleged offense on or about September 28, 1965. Defendant alleges that the people's evidence pointed solely to the date of September 28 and that the trial court erred by failing to restrict the jury's deliberations to that date.

A similar argument was raised in *Brocato.* In that case, all the people's testimony which tended to establish the crime fixed the date as September 28. The jury, after retiring, requested a supplemental instruction on whether they must confine their deliberations to one date. We held that, based on all the testimony at trial, the jury should have been so confined in clear instructions.

In the present case, however, the complainant testified that the offense occurred on September 28 "or a week before that." The trial court charged the jury as follows:

"The information as drawn alleged that the offense was committed on or about the 28th day of September, 1965. The testimony produced on this trial is that the offense, if committed, was committed on the 28th day of September, or possibly on the 21st. Time is not of the essence of the offense charged. That is, it does not matter whether the offense was committed on the 28th or on the 21st if you are satisfied beyond a reasonable doubt that the offense was in fact committed.

"You have the right, however, to consider the allegations and testimony as to time and any discrepancies therein as you consider any other testimony in the case to determine the weight and credit you will give to the testimony of the witnesses in determining guilt or innocence."

We appreciate defendant's consternation at the inconsistency of the testimony by the complainant at the two trials with respect to time. We are, however, bound by the record in this case. The complainant's prior inconsistent statements were utilized by defense counsel as an effective impeachment device and the jury was instructed to consider any discrepancy when considering the weight to be given her testimony. The matter was properly left for their determination and the charge was proper and fair.

At trial, Justin Brocato was called by the prosecution as a *res gestae* witness. On direct examination, he was asked by Mr. Dalzell:

"*Q.* Have you had occasion to meet Lana Jane Robinson?

"*A.* I never met her, no.

"*Q.* Have you seen her?

"*A.* Seen her after my arrest on this charge. I think I saw her at one of the preliminary examinations, and I naturally saw her at my own.

"*Q.* And as a matter of fact, you have had a trial in this matter, also, have you not?

"*A.* That is correct.

"*Q.* And you were found guilty in this trial? Were you convicted? * * *

"*A.* Yes.

"*Q.* And that was a charge of having taken indecent liberties with Lana Robinson, was it not?

"*A.* That's right."

The impeachment of a *res gestae* witness is permitted by statute. CL 1948, § 767.40a (Stat Ann 1954 Rev § 28.980[1]).[3] Moreover, conviction of crime may be shown for the purpose of drawing in question the credibility of a witness. CLS 1961, § 600.2158 (Stat Ann 1962 Rev § 27A.2158). Nevertheless, before the witness took the stand, defense counsel objected to disclosing the witness' prior conviction because of the highly prejudicial effect it would tend to have on the jury and because a motion for new trial was pending. The objection was overruled and the prior conviction was admitted.

We are not directed to any Michigan authority on the subject of whether the credibility of a witness may be attacked by showing a prior conviction while either an appeal or a motion for new trial is pending.

---

[3] Brocato was not an accomplice of defendant in the legal sense, although he was present at the time and place of the offense (according to the complainant). Hence allowing his impeachment does not violate the rule discussed in *People* v. *Virgil Brown* (1969), 15 Mich App 600, 603.

It appears to be the majority rule, however, that, unless and until the conviction is reversed or set aside, the witness may properly be questioned regarding the conviction for the purpose of testing credibility. *Suggs* v. *State* (1969), 6 Md App 231 (250 A2d 670), and cases cited therein. Such has been held proper even where, as here, the conviction is subsequently reversed.

As stated in *Suggs* v. *State*, 250 A2d 670, 673, "[W]here * * * the prior conviction was not presumptively void at the time of its introduction in evidence, it does not constitute reversible error for the State to utilize it for impeachment purposes even though the prior conviction is subsequently reversed on appeal." The trial court's overruling of defense counsel's objection to the use of witness Brocato's prior conviction, insofar as it was based on the pending motion for new trial, was proper.

However, we are persuaded that the witness' prior conviction was so highly prejudicial to defendant that it should not have been admitted for impeachment purposes. "[I]f certain evidential material, having a legitimate probative value, tends nevertheless to produce also, over and above its legitimate effect, an unfair prejudice to the opponent, or by virtue of the personality of the witness tends to receive an excessive weight in the minds of the tribunal, there is good ground for excluding such evidence, unless it is indispensable for its legitimate purpose." 6 *Wigmore on Evidence* (3d ed), § 1864, p 491. In the recent case of *People* v. *Turner* (1969), 17 Mich App 123, this court passed on the admissibility of highly prejudicial photographs and adhered to the principle that "evidence relevant to a material point in issue may, nevertheless, be inadmissible if

its possible prejudicial effect outweighs its probative value."

Here, the witness was convicted on the testimony of the complainant who was also the complainant in a similar offense which allegedly occurred at the same time and at the same place as that for which defendant was being tried. In effect, the jury here was told that another jury, when presented with virtually the same facts as those presented here, had found the defendant guilty. The prejudice to this defendant was manifest and overwhelming. The admission of Brocato's conviction for impeachment purposes was error and should not be permitted in any eventual retrial of this case.

Relevant to our holding is the position taken in *Luck* v. *United States* (1965), 121 App DC 151 (348 F2d 763), with regard to the dilemma of an accused who may wish to take the stand in his own defense, but is faced with the threat of his prior record being revealed to the jury:

"There may well be cases where the trial judge might think that the cause of truth would be helped more by letting the jury hear the defendant's story than by the defendant's foregoing that opportunity because of the fear of prejudice founded upon a prior conviction. *There may well be other cases where the trial judge believes the prejudicial effect of impeachment far outweighs the probative relevance of the prior conviction to the issue of credibility.* This last is, of course, a standard which trial judges apply every day in other contexts; and we think it has both utility and applicability in this field." 348 F2d 763, 768. (Emphasis supplied.)

For a thoughtful discussion of the *Luck* doctrine, see *Burg* v. *United States* (CA9, 1969), 406 F2d 235.

At trial, Peter Klobucher testified as a prosecution witness. On direct examination, he was asked:

"*Q.* Now, Mr. Klobucher, you have been arrested for statutory rape with Lana Jane Robinson, have you not?

"*A.* I was arrested, yes.

"*Q.* And you admitted guilt in this matter?

"*A.* I pled guilty, yes."

The following excerpts from the transcript are taken from the cross-examination by the prosecutor of Dr. Emanuel Tanay, a psychiatrist who testified for the defense:

"*Q.* All right. Now, doctor, assuming for the moment that she said certain things about Peter Klobucher of a sexual nature and assuming for the moment, doctor, that Peter Klobucher was charged with the crime of statutory rape and that in connection with that charge, Peter Klobucher entered a plea of guilty—now, assume all these facts for a minute, if you will, doctor. Is it probable that she was fantasizing about Peter Klobucher? * * *

"*Q.* All right, fine. Now, doctor, assume for the moment that Lana Jane Robinson had also indicated certain sexual improprieties with a man by the name of John Houk and that John Houk was charged with violating this girl in some way, and that John Houk when he came into court at some point pled guilty to this charge. Now, doctor, is it probable that she is fantasizing about John Houk? * * *

"*Q.* Now then, doctor, supposing that in the case—and assume for the moment that Lana Jane Robinson had made certain statements about a gentleman by the name of Dennis Argetsinger—I have trouble—A-r-g-e-t-s-i-n-g-e-r,[4] and—

"*A.* No difference to me. I don't know him anyway.

"*Q.* And that when that gentleman was charged with a crime—assume all this, doctor—he came in

---

[4] We cannot suppress our curiosity over the need to correctly spell the name of a "hypothetical" defendant.

and he pled guilty to this crime, do you think in that particular case, doctor, that it is probable that Lana Jane Robinson was fantasizing about her sexual activity with that man?   *   *   *

"Q. All right, fine.   Now, doctor, assume for the moment that Lana Jane Robinson had made certain statements about a gentleman by the name of Gross, David Gross, and that David Gross was charged with a crime of sexually violating this girl, and that David Gross came in and pled guilty to this crime, would you say in that particular case, doctor, that Lana Jane Robinson is fantasizing about her sexual involvement with that man?   *   *   *

"Q. All right.   Now, doctor, assume for the moment that Lana Jane Robinson has made statements about Richard Eugene Cross, and he has in turn pled guilty to sexual involvement with her, would you say in that particular case, doctor, that Lana Jane Robinson was fantasizing about her sexual involvement with that man?   *   *   *

"Q. All right.   Now, doctor, assume for the moment that she has also given information about a gentleman by the name of Donald Cannon, and he was charged with the crime of sexual involvement with this girl—

"A. And he pled guilty.

"Q. (*continuing.*)—and he pled guilty, doctor. Now, doctor, do you think she is fantasizing about Donald Cannon and his sexual involvement with this girl?

"A. Not if he pled guilty.

"Q. So then it is highly unlikely, isn't it, doctor, that these assumed[5] defendants have pled guilty and have done so upon the fantasizing of Lana Jane Robinson; is that correct?

---

[5] Quite clearly by this time there was nothing "assumed" about these defendants.

"*A.* I would assume that if they pled guilty, they must have known what they were doing. \* \* \*

"*Q.* Doctor, has anybody ever advised you that Peter Klobucher has pled guilty to this crime?

"*Mr. Bellows:* Objection as not pertinent to the issue in this case.

"*Mr. Burge:* It is in evidence, your Honor.

"*The Court:* Take the answer."

In addition, Dr. William Decker, a psychiatrist called as a witness by the people, was asked on direct examination:

"*Q.* Now doctor, if Lana had told you about these various episodes of sexual involvement, and I was to tell you that nine or ten of these men have already entered a plea of guilty or been convicted in these cases, would that reaffirm your basis of her honesty and credibility?

"*Mr. Bellows:* Objection, if the court please. I object to that as invading the province of the jury. It is hearsay. I don't believe it is competent.

"*The Court:* The objection is sustained."

The trial judge, in denying defendant's motion for a new trial, stated:

"Respondent's counsel referred in his opening statement to Miss Robinson's involvement with other men, and, by producing and examining Dr. Tanay as to her mental condition and the probability that she was untruthful, opened the door to proof that several men, including Brocato and Klobucher, had pled guilty to or been convicted of sexual offenses against this girl."

We do not agree.

"Where two or more persons are jointly indicted for the same criminal offense which is in its nature several, or are separately indicted for such offense or for separate offenses growing out of the same

circumstances, and are tried separately, the fact that one defendant has pleaded guilty or has been convicted is, as a general rule, inadmissible as against the other, since competent and satisfactory evidence against one person charged with an offense is not necessarily so against another person charged with the same offense, and since each person charged with the commission of an offense must be tried upon evidence legally tending to show his guilt or innocence. [*Cf. Bruton* v. *United States* (1968), 391 US 123 (88 S Ct 1620, 20 L Ed 2d 476)]. * * *

"Whether [a prosecuting attorney's disclosure during trial that another defendant has pleaded guilty] was prejudicial is a question of fact, and, in the final analysis, each case must be determined on its own particular facts, for there is no legal standard by which the prejudicial qualities of a prosecuting attorney's remarks or conduct can be gauged, and it is only when, in the light of all the circumstances attendant upon a trial, the misconduct complained of can be said to have influenced the jury's verdict and prevented a fair trial, that prejudice results."   48 ALR2d 1016–1018.

We held in *Brocato* that references by the prosecutor to guilty pleas entered by the other men accused by this complainant of sexual offenses were sufficiently improper to warrant a mistrial.   Here, the references were more frequent and more direct. Their effect was even more prejudicial to Eldridge than to Brocato.

Defendant contends finally that the verdict was against the great weight of the evidence.   For the same reasons expressed in *Brocato,* the evidence here was sufficient to sustain the conviction.

Reversed and remanded.

All concurred.