# PEOPLE v. MARRA

OPINION OF THE COURT

1. ABORTION—FETUS—VIABILITY—INTENT.

The viability of the fetus need not be proved in a prosecution for committing an abortion; the defendant's intent to procure a miscarriage is the important factor.

2. CRIMINAL LAW — PHOTOGRAPHIC IDENTIFICATION — EVIDENTIARY HEARING — DISCRETION.

An evidentiary hearing need not be held to inquire into the circumstances surrounding an out-of-court photographic identification of a defendant; the granting of such a hearing is in the discretion of the trial court.

3. CRIMINAL LAW—COMPLAINANT'S STATEMENT—POLICE OFFICER'S NOTES—RIGHT TO EXAMINE.

A criminal defendant has the right to inspect a police officer's notes of an interview with the complaining witness if the notes are a substantial transcription of the complainant's own words or if the police officer has refreshed his recollection with the notes and based his testimony on them; however, if the notes are mere fragmentary jottings of the officer's own interpretation of the witness's statement or if a privilege is asserted, the notes need not be produced.

4. TRIAL—CROSS-EXAMINATION—SCOPE OF CROSS-EXAMINATION.

A party having the right to cross-examine has a right to draw out from a witness and lay before the jury anything tending

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 1 Am Jur 2d, Abortion § 21.
[2] 30 Am Jur 2d, Evidence §§ 582, 584, 585, 587, 783–787, 1105.
[3, 12–14] 30 Am Jur 2d, Evidence §§ 842, 843, 846, 847.
[4] 58 Am Jur, Witnesses § 609 et seq.
  29 Am Jur 2d, Evidence § 267.
[5, 8, 9] 21 Am Jur 2d, Criminal Law § 118.
  30 Am Jur 2d, Evidence § 1148 et seq.
[6] 53 Am Jur, Trial §§ 480, 506.
[7, 10, 11] 30 Am Jur 2d, Evidence §§ 582, 584, 585, 587.

or which may tend to elucidate the testimony or affect the credibility of the witness.

5. ABORTION — CONSPIRACY — EVIDENCE — ACCOMPLICE'S ADMISSIONS.

Allowing an accomplice of the defendant to state that she had been charged with the defendant and others for the abortion for which the defendant was being tried, that she knew the defendant, and that she had plead guilty of the crime charged was not error where the testimony was used to show a conspiracy to commit abortion.

6. CRIMINAL LAW—PRIOR CRIMINAL RECORD—PROSECUTOR'S COMMENT.

Allowing prosecutor to state that the complainant had seen a photograph of the defendant in a "mug file" was not reversible error even though the defendant had not placed his criminal record in issue where the trial judge instructed the jury to disregard the prosecutor's remarks.

7. CRIMINAL LAW—COMPLAINANT'S STATEMENTS—POLICE OFFICER'S NOTES—RIGHT TO EXAMINE—EVIDENTIARY HEARING.

Evidentiary hearing should be held to determine whether notes taken by a police officer during an interview with the complainant are mere fragmentary jottings of the officer's interpretation of the facts given in the interview or whether the notes are a substantial transcription of the complainant's own words and were used by the officer to refresh his memory before testifying; if the notes are found to be a substantial transcription of the complainant's own words used by the officer to refresh his memory, and if the defendant was not allowed to see the notes at trial, the defendant will be entitled to a new trial if there is any prejudicial conflict between the notes and the officer's testimony.

Opinion of
LEVIN, J.

8. CRIMINAL LAW — EVIDENCE — ACCOMPLICE'S ADMISSIONS — JOINT TRIAL — RESTRICTIONS.

*Admissions of an accomplice of the defendant are admissible in a joint trial of the accomplice and the defendant only if (1) there is a cautionary instruction that the admissions are to be considered only in judging the accomplice's guilt and not the defendant's and (2) the accomplice is subject to cross-examination.*

9. CRIMINAL LAW — ACCOMPLICE'S ADMISSIONS — ADMISSIBILITY —
   RESTRICTIONS — MISTRIAL.

   *Defendant was entitled to a mistrial on the ground that an
   accomplice of the defendant was allowed to testify that she
   had pled guilty and had been convicted of the same crime
   for which the defendant was being tried where the defendant
   and the testifying accomplice were not being tried jointly
   and where the accomplice's testimony was not without signi-
   ficance in bringing about the defendant's conviction.*

10. CRIMINAL LAW — IDENTIFICATION — PHOTOGRAPHIC IDENTIFICA-
    TION — EVIDENTIARY HEARING — DISCRETION.

    *Trial judge's refusal to hold a separate evidentiary hearing
    dealing with the circumstances surrounding an out-of-court
    photographic identification of the defendant and to determine
    whether the out-of-court identification procedure was so im-
    permissibly suggestive as to vitiate an in-court identification
    on the ground that the trial judge believed these issues were
    for the jury alone to decide constituted a refusal to exercise
    discretion in deciding whether a hearing should be held.*

11. CRIMINAL LAW — IDENTIFICATION — PHOTOGRAPHIC IDENTIFICA-
    TION — EVIDENTIARY HEARING.

    *A separate determination must be made by the trial judge, out
    of the presence of the jury, that the procedure followed in
    a pre-trial photographic identification of the defendant was
    consistent with the requirements of due process or that an
    in-court identification made by a witness who participated
    in the pre-trial identification had an independent origin from
    the photographic identification before the in-court identifica-
    tion can be admitted, once the defendant has challenged the
    fairness of the pre-trial identification procedure.*

12. CRIMINAL LAW—COMPLAINANT'S STATEMENT—POLICE OFFICER'S
    NOTES — RIGHT TO EXAMINE.

    *A criminal defendant has the right to inspect a police officer's
    notes of the officer's interview with the complainant regard-
    less of whether the notes are fragmentary jottings of the
    officer's interpretation of the facts stated by the complain-
    ant or whether the notes are a substantial transcription of
    the complainant's own words, because the defendant should
    not be precluded from showing that if the fragmentary jot-
    tings differ from the complainant's statement, the difference
    occurred because something reflected in the jottings was in-
    tentionally or unintentionally omitted in the preparation of
    the statement.*

13. CRIMINAL LAW—COMPLAINANT'S STATEMENT—POLICE OFFICER'S NOTES—NEW TRIAL—IMPEACHMENT VALUE.

> Refusal to allow a defendant's attorney to see notes made by a police officer during his interview with the complainant does not necessarily require a new trial; however, defendant would be entitled to a new trial, if, on remand, it is determined that there is anything in the notes which might have enabled the defendant's attorney to impeach the credibility or the testimony of the complainant.

Appeal from Kent, Stuart Hoffius, J. Submitted Division 3 March 4, 1970, at Grand Rapids. (Docket No. 7,740.) Decided October 1, 1970.

Eugene Marra was convicted of abortion and conspiracy to commit abortion. Defendant appeals. Remanded with instructions.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *James K. Miller,* Prosecuting Attorney, *Wesley J. Nykamp,* Chief Appellate Attorney, for the people.

*Louisell & Barris (Carl Ziemba,* of counsel), for defendant.

Before: R. B. BURNS, P. J., and FITZGERALD and LEVIN, JJ.

R. B. BURNS, P. J. Defendant was convicted by a jury of the crimes of abortion and conspiracy to commit abortion. His claim of appeal raises five questions for the Court's consideration.

1) Did the trial court err in refusing defendant's request for a jury instruction to the effect that in order to find the defendant guilty they must find there was a living being within the uterus of the complainant at the time of the alleged act of abortion?

MCLA § 750.14 (Stat Ann 1962 Rev § 28.204) states:

"Any person who shall wilfully administer to any pregnant woman any medicine, drug, substance or thing whatever, or shall employ any instrument or other means whatever, with intent thereby to procure the miscarriage of any such woman, unless the same shall have been necessary to preserve the life of such woman, shall be guilty of a felony, and in the case the death of such pregnant woman be thereby produced, the offense shall be deemed manslaughter.

"In any prosecution under this section, it shall not be necessary for the prosecution to prove that no such necessity existed."

The word "pregnant" is not defined in the statute. In other jurisdictions whose statutes read "pregnant woman" the Courts have held that the viability of the fetus need not be proved. See 16 ALR2d 949, § 3, p 951. The medical testimony in this case was that a woman could be pregnant with a dead fetus. The important factor is intent. There was testimony from which the jury could find that defendant intended to procure a miscarriage on the complaining witness. The defendant's requested instruction was properly denied.

2) Did the trial court err in refusing to grant defendant's pretrial motion to conduct a *"Walker"*[1] type hearing to determine whether the out-of-court photographic identification of defendant by complainant was so tainted and colored by impermissibly suggestive procedures as to vitiate her in-court identification?

Defendant cites *United States* v. *Wade* (1967), 388 US 218 (87 S Ct 1926, 18 L Ed 2d 1149); *Gilbert* v. *California* (1967), 388 US 263 (87 S Ct 1951, 18 L

---

[1] *People* v. *Walker* (On Rehearing, 1965), 374 Mich 331.

Ed 2d 1178); and *Simmons* v. *United States* (1968), 390 US 377 (88 S Ct 967, 19 L Ed 2d 1247) in support of his contention that he was entitled to a hearing to determine the circumstances of the photographic identification by complainant. We are not persuaded that *Wade* and *Gilbert,* dealing with the right to counsel at lineups, are applicable. In *Simmons,* the Supreme Court recognized the hazards of misidentification, but said:

"The danger that use of the technique may result in convictions based on misidentification may be substantially lessened by a course of cross-examination at trial which exposes to the jury the method's potential error. We are unwilling to prohibit its employment, either in the exercise of our supervisory power or, still less, as a matter of constitutional requirement. Instead, we hold that each case must be considered on its own facts, and that convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification."

The decision to grant such a hearing was within the discretion of the trial court. Although we would encourage that such discretion be freely exercised in favor of a defendant, we cannot say, after a thorough review of the facts and circumstances of this case, that the trial court abused its discretion. Defendant's motion was properly denied.

3) Did the trial court err in refusing defendant's request to order the prosecution to furnish defense counsel the police officer's notes of complainant's statements or interviews?

The notes in question were notes which an officer had taken on a yellow legal pad in his initial interviews with the complaining witness. Defendant's

request for these notes at trial was denied by the trial court on the basis that they were the private and personal notes of the policeman.   Defendant contends he was entitled to inspect these notes under the authority of *People* v. *Dellabonda* (1933), 265 Mich 486 and *People* v. *Jessie Lee Johnson* (1967), 8 Mich App 462, and he was thus deprived of an effective opportunity to cross-examine both complainant and the officer.

While *Dellabonda* and *Johnson* say that inspection of police reports should be allowed for purposes of impeachment, those cases dealt with reports and notes already turned over to higher authorities in the official line of communication.   It should be noted that defense counsel was furnished at the preliminary examination, with a $23\frac{1}{2}$ page stenographic copy of the statement of the complaining witness taken in the prosecutor's office and, at trial, was given the official police reports.   The Courts in other jurisdictions are divided on this question.   See Anno: 7 ALR3d 181.   However, there is no reason to refuse a defendant notes at trial if they are a substantial transcription of the complaining witness's own words or if the officer has refreshed his recollection with the notes and based his testimony on them.   If, however, they are mere fragmentary jottings of the officer's own interpretation or a privilege is asserted, then the notes need not be produced.   The trial judge should have at least examined the notes and exercised his discretion whether to allow their use for impeachment purposes.   We think such a rule would comply with the rationale of *Dellabonda, supra,* "One of the elementary principles of cross-examination is that the party having the right to cross-examine has a right to draw out from the witness and lay before the jury anything tending or which may tend to   *   *   *   elucidate the

testimony or affect the credibility of the witness." We, thus, remand to the circuit court to examine the notes in question and to take any further action its determination shall require.

4) Did the trial court err in denying defendant's motion for a mistrial at the conclusion of the testimony of Charlotte Bitker. The motion contended that Bitker was not called to give any testimony against defendant but merely to recite to the jury that she had been charged with defendant and others on an information for this crime, knew the defendant, and had pled guilty, all to the prejudice of defendant.

Defendant contends that Miss Bitker's testimony was prejudicial because she was called to establish guilt by association and not to show defendant committed the crime in issue. The reason she was called was to show the existence of the abortion conspiracy before defendant became involved in it. If the jury believed the complainant's testimony that defendant committed an abortion on her, then Miss Bitker's testimony regarding the prior abortion attempts was relevant to show a conspiracy. See *People* v. *Newsome* (1966), 3 Mich App 541 and *People* v. *Fred W. Thomas* (1967), 7 Mich App 519. There was no error in allowing this testimony.

5) Did the trial court err in not declaring a mistrial upon defendant's motion when the prosecutor in his closing argument to the jury referred to a photograph of defendant identified by the complainant as being in a "mug file". Defendant claims that this was an impermissible comment on defendant's criminal record which had not been put in issue.

While the remark was undesirable, we do not find that the trial court's instructions to the jury to disregard the remark were insufficient to correct the

possible prejudice to defendant. We must presume the jury heeded those instructions.

The case is remanded to the trial court for an evidentiary hearing to determine whether the police officer's notes are mere fragmentary jottings of the officer's interpretation of the facts, or whether the notes are a substantial transcription of the complainant's own words and were used by the officer to refresh his memory before testifying. If the trial judge determines that the notes are mere fragmentary jottings of the police officer's interpretations and not used to refresh his memory, the conviction is affirmed. However, if the notes are a substantial transcription of the complainant's words, used by the officer to refresh his memory, and there is any *prejudicial conflict* between the notes and the testimony, the trial judge will grant the defendant a new trial.

FITZGERALD, J., concurred.

LEVIN, J. (*concurring in part and dissenting in part*). I am in agreement with my colleagues that the people need not prove that the fetus was viable when the pregnancy was aborted. I also agree that the case should be remanded to the trial court for an evidentiary hearing regarding the officer's notes of the interviews with the complaining witness. I cannot, however, join in the Court's opinion for several reasons.

It is an established rule of law that, with exceptions not here pertinent,[1] the admissions of an alleged accomplice of a defendant are admissible only against the accomplice, not against the defendant.[2]

---

[1] See Gillespie, Michigan Criminal Law and Procedure (2d ed), §§ 466, 485, 1232.

[2] See *People* v. *Tunnacliff* (1965), 375 Mich 298; *People* v. *Stevens* (1882), 47 Mich 411.

Similarly, an accomplice's plea of guilty[3] or his conviction[4] for the offense charged may not be shown in evidence against the defendant.

The force of this rule has been eroded by the practice of conducting joint trials at which admissions of an accomplice are provable with cautionary instructions that the admissions may be considered only in judging the accomplice's guilt and not the guilt of the defendant.[5] This is subject to the further qualification, since *Bruton*,[6] that an accomplice's admissions cannot be proven at all when he is not subject to cross-examination.[7]

Charlotte Bitker was, indeed, subject to cross-examination, but she was not jointly tried with the

---

[3] *Leech* v. *People* (1944), 112 Colo (146 P2d 346); *Babb* v. *United States* (CA 5, 1955), 218 F2d 538, 541; *Pryor* v. *State* (Okla Crim, 1926), 245 P 669, 672; *Moore* v. *State* (DCA Fla. 1966), 186 So 2d 56; *Lane* v. *State* (CA Ala, 1959), 109 So 2d 758; *State* v. *Jackson* (1967), 270 NC 773 (155 SE2d 236); *Jackson* v. *State* (1949), 215 Ark 420 (220 SW2d 800); *State* v. *Gargano* (1923), 99 Conn 103 (121 A 657); *State* v. *Pikul* (1962), 150 Conn 195 (187 A2d 442); *People* v. *Zachery* (1968), 31 App Div 2d 732 (297 NYS2d 183); *Ward* v. *Commonwealth* (1964), 205 Va 564 (138 SE2d 293).

[4] *Leroy* v. *Government of Canal Zone* (CA 5, 1936), 81 F2d 914; *State* v. *Jackson, supra*, fn 3; *State* v. *Frese* (1964), 256 Iowa 289 (127 NW2d 83); *Gray* v. *State* (1969), 221 Md 286 (157 A2d 261); *People* v. *Eldridge* (1969) 17 Mich App 306, 313.

See, generally, 22A CJS, Criminal Law, § 784, p 1190; Anno: Prejudicial effect of prosecuting attorney's argument or disclosure during trial that another defendant has been convicted or has pleaded guilty, 48 ALR2d 1016; 2 Wharton's Criminal Evidence (12th ed), § 439; 2 Underhill's Criminal Evidence (5th ed), § 398, n 94, p 1020. Similarly, see 29 Am Jur 2d, Evidence, § 701, pp 759, 760, as to the nonadmissibility of a plea of guilty in a subsequent civil proceeding to which the one making the admission is not a party.

[5] See *People* v. *Louzon* (1953), 338 Mich 146, 155; *People* v. *Maunausau* (1886), 60 Mich 15, 19.

[6] *Bruton* v. *United States* (1968), 391 US 123 (88 S Ct 1620, 20 L Ed 2d 476).

[7] See, however, *People* v. *Aranda* (1965), 63 Cal 2d 518, 528 (407 P2d 265, 271) and American Bar Association Minimum Standards for Criminal Justice, Joinder and Severance, § 2.3(a) establishing higher standards without regard to whether the accomplice is subject to cross-examination.

defendant Eugene Marra.[8]  Accordingly, there was
no justification for introducing into evidence her
plea of guilty or conviction.[9]  As to the defendant
Marra, her plea was hearsay.[10]  It was not within
any exception to the hearsay rule; it was her admis-
sion, not his.

The evidence against Marra was far from con-
clusive.  We could not properly say that the pros-
ecutor's action in bringing to the jury's attention
Charlotte Bitker's plea of guilty to the charge that
she and Marra were participants in the alleged con-
spiracy was without significance in bringing about
his conviction.  Marra's motion for a mistrial should
have been granted.

Before the commencement of the trial Marra's
counsel asked the court to conduct a hearing out of
the presence of the jury to determine whether an out-
of-court photographic identification of Marra by the
complaining witness was so tainted and colored by
impermissibly suggestive procedures as to vitiate
her in-court identification.  The trial judge refused
to conduct the hearing, saying: "it is a matter of
credibility and a matter of the discretion of the jury
of giving it such weight as the jury determines and
that it would be improper for this court to impose
its judgment in lieu of the jury.  This is not one of
the things that has been taken from the jury under
the *Walker*-type hearing and it seems to me that the
court will proceed and permit the witness to be
cross-examined at length relative to her ability to
identify Mr. Marra."

---

[8] See *United States* v. *Boyce* (CA 4, 1964), 340 F2d 418.

[9] The question was deliberately put by the prosecutor (see *Leech*
v. *People* fn 3).  Immediately after preliminary questions as to the
witness's age and place of residence, she was asked:
  "Q. Isn't it true that you pled guilty to an indictment naming
you, W. J. Wellman, David Paschall, John C. Worke and Eugene
R. Marra as co-conspirators in this county in 1964?"
  "A. Yeah."

[10] See *People* v. *Stevens* (1882), 47 Mich 411.

The majority reject Marra's contention that it was error to deny him a separate hearing, holding that the granting of such a hearing is within the discretion of the trial court and that there was no abuse of discretion in this case.

A trial judge does not enjoy a general discretion to grant or deny *Walker* hearings as a matter of grace. There will, of course, be cases where it will appear that a request for such a hearing is insubstantial or that the refusal to grant such a hearing was inconsequential. But this is not such a case.

Moreover, in this case, in refusing to hold a separate hearing the judge did not purport to exercise discretion. He said in effect that it would be improper for him to substitute his judgment for that of the jury and that this is not the kind of issue as to which a *"Walker-type"* hearing should be held. That is not the exercise of discretion, but rather a refusal to exercise discretion; the judge ruled, as a matter of law, that he didn't have the power to order a separate hearing.[11]

The complaining witness testified that she saw Marra for the first time on April 22, 1964, when an illegal operation was performed upon her. The next time she saw him was almost five years later in January 1969 when she made an in-court identification at the time of the preliminary examination. She testified that she had picked Marra's photograph out of a large file of photographs which was shown to her at Detroit police headquarters in December 1964 and that a couple of days before the preliminary examination a police officer showed her a photograph of Marra.

In *People* v. *Young* (1970), 21 Mich App 684, 690, we held that, where an issue concerning the fairness

---

[11] See *Department of Conservation* v. *Connor* (1948), 321 Mich 648, 653.

of a pretrial lineup (there a pre-*Wade*[12] pretrial lineup) is timely raised, identification testimony should not be admitted until a "separate determination" is made that the lineup was held in a manner consistent with the requirements of due process or that the in-court identification had an independent origin. I see no difference in principle between that case and a case such as this one where the defendant seeks to challenge the fairness of the procedure followed by the police during a pretrial photographic identification.[13]

Most pretrial photographic identifications will, as here, be based on mug shots in police files. Requiring a defendant who wishes to challenge the fairness of a pretrial photographic identification procedure to do so in the presence of the jury exposes him to the risk that the jury will conclude that he has a criminal record because his photograph was in a police file.

Moreover, leaving the question of the fairness of the photographic identification to the jury creates

[12] *United States* v. *Wade* (1967), 388 US 218 (87 S Ct 1926, 18 L Ed 2d 1149).

[13] In *Simmons* v. *United States* (1968), 390 US 377, 384 (88 S Ct 967, 19 L Ed 2d 1247) the United States Supreme Court ruled that the standard it had enunciated in *Stovall* v. *Denno* (1967), 388 US 293 (87 S Ct 1967, 18 L Ed 2d 1199) for judging the fairness of pretrial line-up procedures would also govern where a defendant challenges the fairness of a pretrial photographic identification. Manifestly, just as a defendant is entitled to a separate hearing on a *Stovall* claim, so too he is entitled to a separate hearing on a *Simmons* challenge of the fairness of pretrial photographic identification procedures.

See *Dorsey* v. *State* (1970), 9 Md App 80 (262 A2d 591, 594, 595); *Davis* v. *State* (Okla Crim 1970), 467 P2d 521; *Mason* v. *United States* (1969), 134 App DC 280 (414 F2d 1176, 1182); *United States* v. *Allison* (CA9, 1969), 414 F2d 407, recognizing that where the fairness of a pretrial photographic identification is duly challenged, the defendant is entitled to a separate hearing on the issue by the court outside the jury's presence. Cf. *People* v. *Hawkins* (1970), 7 Cal App 3d 117 (86 Cal Rep 428, 432) where the right to a separate hearing was recognized, but the trial judge's refusal to hold a hearing was upheld on the ground that the fairness of the procedures followed had already been adjudicated in an earlier hearing involving the same defendant.

the substantial risk that the question will, at least in part, be determined by notions of the defendant's guilt.   Also, when a jury returns a general verdict the defendant is deprived of a separate determination whether his constitutional rights were violated by an improperly suggestive photographic identification.   These are the deficiencies which a *Walker* hearing, a separate hearing not in the presence of the jury and a determination by the judge, is designed to avoid.[14]

As to the officer's notes, I see no basis, in regard to the issue presented, for a distinction between "mere fragmentary jottings of the officer's interpretation of the facts," on the one hand, and "a substantial transcription of the complainant's own words" on the other.   As said in *Dellabonda*,[15] on cross-examination a party has the right "to draw out from the witness and lay before the jury anything tending or which may tend to contradict, weaken, modify, or explain the testimony of the witness on direct examination or which tends or may tend to elucidate the testimony or affect the credibility of the witness."

If the "fragmentary jottings" differ from the complaining witness's formal statement, this may be either because the jottings are an incomplete or inaccurate reflection of what the witness told the officer or because the statement is incomplete or inaccurate. While it may be the jottings that are incomplete or inaccurate, we should not preclude the defendant from showing that it is the statement which is incomplete or inaccurate, that something reflected in the jottings was intentionally or unintentionally omitted in the preparation of the statement.

---

[14] See *Jackson* v. *Denno* (1964), 378 US 368 (84 S Ct 1774, 12 L Ed 2d 908); *People* v. *Walker* (On Rehearing, 1965), 374 Mich 331.

[15] *People* v. *Dellabonda* (1933), 265 Mich 486, 499.

The officer and the witness are at liberty to explain that it is the jottings which are incomplete and that the statement as written is true; that the inclusion of something in the statement that was not included in the jottings or the mention in the jottings of something omitted in the statement does not negate the truth of the statement and of the witness's at-trial testimony.[16] There is no need to shield from scrutiny "fragmentary jottings." The interest in full disclosure requires that they be made available for examination at the trial by the defendant and his attorney.

I agree with the majority that the refusal to allow Marra's lawyer to see the notes at the time of trial does not necessarily require a new trial. But it seems to me the inquiry on remand is whether there is anything in the notes which might have enabled Marra's lawyer to impeach the credibility or the testimony of the complaining witness, not whether there is "prejudicial conflict" between the officer's notes and her testimony.

---

[16] An officer's notes are not a statement of a witness. But upon examination of such notes the witness might properly be asked whether he made a statement there reflected. If he denies having made the statement, the officer could be asked whether the statement was made. If it appears that the witness made such a statement either from his testimony or the officer's, that statement, if inconsistent with the witness's written statement or trial testimony, would be of probative value.