**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 09a0291n.06
Filed: April 20, 2009

No. 07-1811

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| DENNIS KINCADE, | ) | |
| | ) | |
| Petitioner-Appellant, | ) | |
| | ) | |
| v. | ) | On Appeal from the United States District Court for the Eastern District of Michigan |
| | ) | |
| HUGH WOLFENBARGER, | ) | |
| | ) | |
| Respondent-Appellee. | ) | |

Before: BOGGS, Chief Judge; and GILMAN and ROGERS, Circuit Judges.

BOGGS, Chief Judge. Petitioner-Appellant Dennis Kincade, proceeding pro se, appeals a district court's denial of his petition for a writ of habeas corpus under 28 U.S.C. § 2254. The petition challenges Kincade's state conviction for first-degree murder and possession of a firearm during the commission of a felony on the basis of ineffective assistance of trial and appellate counsel. Kincade claims that trial counsel was ineffective because he failed to apprise Kincade of the state sentencing guidelines applicable to the state's plea offer and failed to object to alleged prosecutorial misconduct. Kincade alleges that appellate counsel was ineffective because he abandoned claims of ineffective assistance of trial counsel and failed to raise meritorious claims on direct appeal. We hold that the district court correctly denied Kincade's petition and, therefore, we affirm.

**I**

**A**

Dennis Kincade was charged in Wayne County, Michigan with first-degree murder, assault with intent to commit murder, and possession of a firearm during the commission of a felony ("felony firearm"). The charges stemmed from a shooting in Detroit on November 7, 1984. The testimony at trial established that Kincade and Glenn Thomas approached Kevin Taylor and Carl Branham, and Kincade fired a gun at Taylor. Taylor died from the resulting gunshot wounds. Kincade fired additional gunshots at Branham, who nonetheless ran away uninjured. The prosecutor's theory was that Kincade intended to shoot and kill Branham, either because he was hired to kill Branham or because Branham saw him shoot Taylor. Thomas was also charged with murder and assault, pleaded guilty to a lesser charge, and agreed to testify against Kincade. Both Thomas and Branham testified that Taylor was not armed and did not threaten Kincade. Thomas testified that he and Kincade visited Frederick Blakely at the latter's home and Blakely gave Kincade a gun. The three men left and encountered Taylor and Branham in an alley:

> Thomas concluded that defendant was going to rob them [i.e. Taylor and Branham]. Defendant called for Taylor and Branham to "come here" and then told Thomas to grab Branham. Defendant pulled out the gun and fired two shots at Taylor and two or three shots at Branham as he ran away . . . . Thomas saw no weapons on Taylor or Branham at any time, nor did they make any threatening gestures towards defendant. According to Thomas' testimony, defendant later told Thomas that he shot the wrong person and would not get paid. Branham's description of the shooting was similar to Thomas', and Branham indicated that he and Taylor had talked to Blakely about selling drugs a short time before the shooting.

*People v. Kincade*, 412 N.W.2d 252, 252-53 (Mich. Ct. App. 1987). Kincade was the only witness in his own defense. He admitted shooting Taylor, but claimed that he did so in self-defense:

> Defendant testified, however, that he received a call from someone named Roy and went to Blakely's house to pick up money Taylor owed him from a drug deal. Blakely told defendant that Taylor had just left, and had money and a pistol. Defendant borrowed Blakely's gun and held it visible in his hand as he walked towards Taylor, though defendant said it was at his side. Taylor walked towards defendant and told him he had no money. Defendant told Thomas to watch Branham and to hold him. As Taylor approached, defendant thought he was reaching for a gun and was going to shoot defendant, so he fired two shots. Taylor's gun fell to the ground. Defendant fired two more shots in the air. He then picked up and kept Taylor's gun.

*Id*. at 253.

On July 23, 1985, a jury acquitted Kincade of the charge of assault with intent to murder Branham, but found him guilty of first-degree murder and felony firearm. The trial court sentenced Kincade to two years in prison for the felony firearm conviction and to a consecutive statutory term of life imprisonment without the possibility of parole for the murder.

**B**

This case has a lengthy procedural history, which is succinctly summarized by the district court:

**Direct-Appeal Proceedings:**

> Petitioner [i.e. Kincade] appealed his convictions and was granted a remand so that he could file a motion for new trial and seek an evidentiary hearing on a claim of ineffective assistance of trial counsel. He and his attorney subsequently decided not to pursue the ineffectiveness claim. Instead, they alleged that it was error to admit Glenn Thomas's guilty plea in evidence. On August 3, 1987, two judges of a three-judge panel affirmed Petitioner's convictions in a published opinion. *See People v. Kincade*, 412 N.W.2d 252. The majority held that, although an accomplice's guilty plea generally may not be used as substantive evidence at a defendant's trial, the prosecutor used Glenn Thomas's guilty plea to refute Petitioner's theory of self defense and not as substantive evidence of Petitioner's guilt. The dissenting judge voted to reverse Petitioner's conviction on the basis that self defense goes to the heart of an alleged criminal act and, therefore, any evidence which negates self defense is substantive.

No. 07-1811
Kincade v. Wolfenbarger

**State Post-Conviction Proceedings, 1987-1998:**

Petitioner did not appeal the court of appeals decision to the Michigan Supreme Court. He did file two pro se motions for a new trial [the first filed in September 1987, the second on September 23, 1989], which the trial court denied. On appellate review of the trial court's denial of the second motion for new trial, the Michigan Supreme Court remanded the case to the trial court for a hearing on Petitioner's claim that he was denied effective assistance of counsel. *See People v. Kincade*, 461 N.W.2d 372 (Mich. 1990). The trial court appointed counsel for Petitioner and held a hearing on January 23-24, 1991, and April 26, 1991 ["*Ginther* hearing"[1]]. On the final day of the hearing, the trial court denied relief after concluding that Petitioner received effective representation. The Michigan Court of Appeals affirmed the trial court's decision, *see People v. Kincade*, No. 190068, 1997 Mich. App. LEXIS 2219 (Mich. Ct. App. Nov. 21, 1997), and the Michigan Supreme Court denied leave to appeal on September 28, 1998, *see People v. Kincade*, 586 N.W.2d 89 (Mich. 1998) (table).

**First Habeas Corpus Petition, 1999-2001:**

Next, Petitioner filed a federal habeas corpus petition, which alleged (1) ineffective assistance of trial and appellate counsel, (2) prosecutorial misconduct during closing argument, and (3) denial of the right to poll the jurors following their verdict. This [federal district] Court dismissed the petition without prejudice for failure to exhaust state remedies for the second and third claims. *See Kincade v. Stegall*, No. 99-CV-76350-DT, 2001 U.S. Dist. LEXIS 3039 (E.D. Mich. Jan. 23, 2001).

**State Post-Conviction Proceedings, 2002-2004:**

Petitioner then filed a motion for relief from judgment alleging ineffective assistance of trial and appellate counsel, prosecutorial misconduct during closing argument, and denial of the right to poll the jurors. [On October 21, 2002] [t]he trial court denied Petitioner's motion. It found no merit in Petitioner's ineffectiveness claims, and it stated that Petitioner could have raised his claim about polling the jury [and "new ineffective assistance of counsel issues"] on appeal from his convictions.[2] The Michigan Court of Appeals denied leave to

---

[1]*See People v. Ginther*, 212 N.W.2d 922 (Mich. 1973).

[2]The court did not specify which grounds for claiming ineffective assistance of counsel it considered "new" and therefore precluded from consideration under Michigan Court Rule (MCR) 6.508(D)(3)(a)(b). *People v. Kincade*, No. 85-002809-01 (Mich. Cir. Ct. Oct. 21, 2002).

appeal the trial court's decision for failure to establish entitlement to relief under Michigan Court Rule 6.508(D). *See People v. Kincade*, No. 248330 (Mich. Ct. App. Sept. 4, 2003). On April 30, 2004, the Michigan Supreme Court denied leave to appeal for the same reason. *See People v. Kincade*, 679 N.W.2d 74 (Mich. 2004) (table).

**Second Habeas Corpus Petition, 2004:**

Petitioner initiated this action by filing a habeas corpus petition on July 19, 2004. The habeas petition raised four claims: (1) ineffective assistance of trial counsel, (2) prosecutorial misconduct, (3) denial of the right to poll the jury, and (4) ineffective assistance of appellate counsel. Respondent moved for summary judgment on the ground that the habeas petition was barred by the one-year statute of limitations. The Court denied the motion and requested an answer on the merits of Petitioner's claims. In the meantime, Petitioner filed an amended habeas petition, which does not include the claim about being denied the right to poll the jury. The Court deems that claim abandoned.

*Kincade v. Wolfenbarger*, No. 04-CV-72599-DT, 2007 U.S. Dist. LEXIS 33944, at *5-6 (E.D. Mich. May 9, 2007) (bolded headings and alterations added; parallel citations omitted).

The federal district court considered the petition on its merits and denied habeas relief. Kincade filed a motion for a certificate of appealability and a notice of appeal. The district court granted a certificate of appealability on Kincade's appellate-counsel claim and the two related sub-claims about trial counsel: trial counsel's failure to advise Kincade that state sentencing guidelines would apply were he to plead guilty, and counsel's failure to object to the prosecutor's use of Thomas's guilty plea. *Kincade*, 2007 U.S. Dist. LEXIS 43812, at *4. We construed the notice of appeal as an application for a certificate of appealability, which we declined to issue with regard to Kincade's remaining claims.

**II**

Respondent Warden Hugh Wolfenbarger argues that, while the district court correctly denied habeas relief, the petition should have been dismissed for non-compliance with the statute of limitations because the district court erred in equitably tolling the statute and denying Wolfenbarger's motion for summary judgment.[3] We disagree.

In *Dunlap v. United States*, we held that the one-year limitation period contained in § 2244 of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") is a statute of limitations subject to the doctrine of equitable tolling. 250 F.3d 1001, 1004 (6th Cir.), *cert. denied*, 534 U.S. 1057 (2001). We further held that "where the facts are undisputed or the district court rules as a matter of law that equitable tolling is unavailable, we apply the de novo standard of review to a district court's refusal to apply the doctrine of equitable tolling; in all other cases, we apply the abuse of discretion standard." *Id*. at 1008. In this case, the district court's decision to equitably toll the statute was made in the exercise of the court's discretion, which we review for abuse of discretion.[4]

_____

[3]While Wolfenbarger does not cross-appeal this issue, "matters raised below as alternative grounds in support of a judgment are properly before this Court even in the absence of a cross-appeal." *United States v. True*, 250 F.3d 410, 419 (6th Cir. 2001).

[4]This rule of law has occasionally been rephrased in a manner that appears to alter its meaning: "[a]n abuse-of-discretion standard is applicable only when the underlying facts on which tolling is based are in dispute. When, as here, those facts are undisputed and the district court's decision to grant or deny equitable tolling involves only a question of law, our review is de novo." *Bilbrey v. Douglas*, 124 F. App'x 971, 973 (6th Cir. 2005) (citing, *inter alia*, *Dunlap v. United States*, 250 F.3d 1001 (6th Cir. 2001)). This reformulation suggests de novo review of a decision to apply equitable tolling in cases such as the one at bar, because it was made on the basis of undisputed facts. We do not think that this is an appropriate interpretation of the applicable standard of review. Although the facts are not in dispute in this case, it cannot be said that the decision to equitably toll the statute was "only a question of law" because it was made in the exercise of the court's discretion. As we explained in *Griffin v. Rogers*, "[e]quitable tolling is a discretionary doctrine that does not lend itself to bright line rules." 399 F.3d 626, 639 (6th Cir. 2005) (internal quotation marks and citation omitted). We think it would be incongruous to review de novo a

"To be entitled to equitable tolling, [a petitioner] must show '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Lawrence v. Florida*, 127 S. Ct. 1079, 1085 (2007) (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)). We have identified five factors that we felt were "pertinent" to an application of equitable tolling: "(1) lack of actual notice of filing requirement; (2) lack of constructive knowledge of filing requirement; (3) diligence in pursuing one's rights; (4) absence of prejudice to the defendant; and (5) a plaintiff's reasonableness in remaining ignorant of the notice requirement." *Andrews v. Orr*, 851 F.2d 146, 151 (6th Cir. 1988).

In addition, we have established a "mandatory" form of equitable tolling in the context of post-AEDPA "mixed" petitions. *Palmer v. Carlton*, 276 F.3d 777 (6th Cir. 2002) (adopting "mandatory equitable tolling" for habeas petitions containing both exhausted and unexhausted claims, entitling petitioners to such tolling if they file in state court within 30 days of the dismissal and return to federal court within 30 days following exhaustion of state remedies). We have also clarified that this "mandatory" tolling does not foreclose the possibility of applying "traditional" equitable tolling addressed in *Andrews*. *Griffin v. Rogers*, 399 F.3d 626, 631 (6th Cir. 2005).

At the time AEDPA was enacted on April 24, 1996, Kincade was pursuing state remedies. State proceedings came to a close on September 28, 1998. In his August 15, 2005 order denying Wolfenbarger's motion for summary judgment, District Judge Steeh tolled the limitation period "another ninety days" beyond the close of state proceedings "or until December 27, 1998, for the time that Petitioner could have sought review in the Supreme Court." J.A. 164 (citing *Bronaugh v.*

_____

decision to apply a discretionary remedy when it entails no application of a clear rule of law.

*Ohio*, 235 F.3d 280, 285 (6th Cir. 2000); *Abela v. Martin*, 348 F.3d 164, 172-73 (6th Cir. 2003), *cert. denied sub nom. Caruso v. Abela*, 541 U.S. 1070 (2004)). Thus, according to the district court, Kincade's first petition was timely filed on September 13, 1999, with about three and a half months remaining of the one-year limitation period (about 106 days).[5]

The first habeas petition was dismissed without prejudice on January 23, 2001, and Kincade filed a post-conviction motion in state court on March 4, 2002. Judge Steeh equitably tolled the time limitation while Kincade's first petition was pending before the federal court (September 13, 1990 – January 23, 2001), noting that "federal courts may deem the limitations period tolled for a first federal habeas petition as a matter of equity." J.A. 164 (citing *Duncan v. Walker*, 533 U.S. 167, 183 (2001) (Stevens, J., concurring)). On the date of dismissal of his first habeas petition, taking into account the periods tolled, Kincade had approximately 106 days – or until approximately May 9,

---

[5]The law on the effect of Supreme Court review has been reversed a number of times. The first time we confronted the question, we held that "§ 2244(d)(2) does not toll the limitations period to take into account the time in which a defendant could have potentially filed a petition for certiorari with the United States Supreme Court, following a state court's denial of *post-conviction* relief." *Isham v. Randle*, 226 F.3d 691, 694 (6th Cir. 2000) (emphasis added). *Isham* was subsequently overruled by *Abela v. Martin*, 348 F.3d 164, 172 (6th Cir. 2003), in which the en banc court held that the 90-day period to file a petition for a writ of certiorari to the United States Supreme Court after denial of relief in a state post-conviction action would toll the limitation period. The Supreme Court effectively overruled *Abela* in *Lawrence v. Florida*, 549 U.S. 327 (2007), which held that "the AEDPA limitations period would not be tolled during the 90 days in which a prisoner can seek that Court's review of a state court's denial of post-conviction relief." *Henderson v. Luoma*, No. 05-2542, 2008 U.S. App. LEXIS 24225, at *5 (6th Cir. 2008) (citing *Lawrence*, 549 U.S. 327). At the time Kincade filed his first habeas petition on September 13, 1999, *Isham* had not yet been decided and there was no clear rule of law on this issue. On August 15, 2005, when Judge Steeh issued his order declining to dismiss Kincade's petition as untimely, *Abela* was still good law; therefore, tolling AEDPA's limitations for 90-day after state post-conviction proceedings ended, following *Abela*, was reasonable. *See Henderson,* 2008 U.S. App. LEXIS 24225, at *8-9.

2001 – to re-file his habeas petition, or to file for post-conviction state relief and toll the statute again. Kincade's March 2002 filing for post-conviction relief exceeded that date by nearly ten months. Post-conviction relief was denied by the Michigan Supreme Court on April 30, 2004, and Kincade's second habeas petition was filed a little over two months later on July 8, 2004. Judge Steeh considered that latter filing to be timely because the limitation period was statutorily tolled during the pendency of post-conviction state proceedings and Kincade had ninety days from the April 30, 2004 Michigan Supreme Court decision to seek Supreme Court review.[6] Wolfenbarger argues that the statute should not have been tolled by post-conviction state proceedings when these were commenced after the statute of limitations has already run. Resp. Br. at 12. However, if the district court did not abuse its discretion in equitably tolling the ten-month period *prior* to these state proceedings, there is no reason why statutory tolling under § 2244 (d)(2) would not apply.

Thus, the delay in filing the second petition that was arguably attributable to Kincade amounts to approximately ten months beyond AEDPA's time limit (the time period between the dismissal of his first habeas petition and filing in state court for post-conviction relief). The district judge determined that his "order of dismissal could have led Petitioner to believe that there was no deadline for filing a post-conviction motion in state court and that the statute of limitations was not a bar to filing another habeas petition in federal court." J.A. 166. The district judge explained that first, Kincade relied on a footnote in the order dismissing his first petition, stating that "the statute of limitations contained in 28 U.S.C. § 2244(d)(1) would be tolled pursuant to § 2244(d)(2) while this second motion for relief from judgment was pending before the Michigan courts." J.A. 114.

---

[6]See note 5, *supra*.

Second, the court's dismissal order "did not establish any timetable or conditions for returning to state court." *Ibid*. Moreover, at the time, this circuit had not yet decided *Palmer*, which held that habeas petitioners must ordinarily return to state court within 30 days of a dismissal of a habeas petition for failure to exhaust state remedies. Finally, the district court determined that Wolfenbarger was not prejudiced by the delay.[7] Based on these considerations, the district court deemed it appropriate to apply equitable tolling. While we have noted that "absence of prejudice" is not an independent basis for invoking equitable tolling, we have not required that any of the five *Andrews* factors must be present to justify equitable tolling. Instead, we stated that "these factors are not necessarily comprehensive and they are not all relevant in all cases. Ultimately, the decision whether to equitably toll a period of limitations must be decided on a case-by-case basis." *Souter v. Jones*, 395 F.3d 577, 588 (6th Cir. 2005) (quoting *Miller v. Collins*, 305 F.3d 491, 495 (6th Cir. 2002)) (internal quotation marks omitted).

Therefore, we hold that the district court did not commit reversible error in the exercise of its discretion, and proceed to review the district court's disposition of the substantive claims.

**III**

**A**

AEDPA governs this court's review of Kincade's habeas petition. Under 28 U.S.C. § 2254, a writ of habeas corpus may be granted only if the state court's adjudication of the claims "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted

---

[7]Nor does Wolfenbarger claim prejudice from the application of equitable tolling.

in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the State court proceedings." § 2254(d)(1).

AEDPA's deferential standard of review applies only to claims that were adjudicated on the merits in state court proceedings. If the claims raised in the petition are procedurally defaulted in state court, the petitioner must either "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Murphy v. Ohio*, 551 F.3d 485, 502 (6th Cir. 2009) (quoting *Coleman v. Thompson*, 501 U.S. 722, 732 (1991)). A petitioner procedurally defaults his claims for habeas relief if he did not present those claims to the state courts in accordance with the state's procedural rules. *See Wainwright v. Sykes*, 433 U.S. 72, 87 (1977); *Murphy*, 551 F.3d at 501-502. Whether a state court found the petitioner's claim to be procedurally defaulted is a question of law that we review de novo. *Couch v. Jabe*, 951 F.2d 94, 96 (6th Cir. 1991); *Abela*, 380 F.3d at 922. We review the district court's denial of habeas corpus de novo; the district court's findings of fact will be upheld unless they are clearly erroneous. *Simpson v. Jones*, 238 F.3d 399, 405 (6th Cir. 2000) (citations omitted).

**B**

Kincade argues that his trial counsel was ineffective in two respects. First, Kincade claims that trial counsel's ignorance and misrepresentation of the state's sentencing guidelines violated Kincade's Sixth Amendment right because he was not able to make an informed decision with regard to a possible guilty plea. Second, Kincade claims that his counsel failed to object to the introduction

and use of Thomas's guilty plea, which Kincade alleges was used as substantive evidence of Kincade's guilt by association.

Wolfenbarger contends first that Kincade's ineffective-assistance claims are procedurally defaulted. The district court noted that it is "not required to address a procedural-default issue before deciding against the petitioner on the merits," 2007 U.S. Dist. LEXIS 33944, at *6 (quoting *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003)), and elected to address the merits of Kincade's claims. We now hold that Kincade's claims were not procedurally defaulted and proceed to review the district court's decision on the merits.

In *Maupin v. Smith*, this court adopted a three-part standard to determine whether a claim has been procedurally defaulted in state courts. 785 F.2d 135, 138 (6th Cir. 1986). First, there must be a state procedural rule in place that the petitioner failed to follow. *Ibid*. Second, the state court must have actually denied consideration of the petitioner's claim on the ground of the state procedural rule. *Ibid.*[8] Third, the state procedural rule must be an "adequate and independent" state ground to preclude habeas review. *Maupin*, 785 F.2d at 138. To be "adequate," a state rule must be "firmly established and regularly followed at the time it is applied." *Abela*, 380 F.3d at 921; *Williams v. Coyle*, 260 F.3d 684, 693 (6th Cir. 2001). And to be "independent," the state court must "actually [have] relied on the rule to bar the claim at issue." *Abela*, 380 F.3d at 921.

---

[8]As we recently observed, this question arises frequently with respect to Michigan state proceedings because the state courts persist in using a standard, one-sentence order, citing a procedural rule with no further explanation. *Alexander v. Smith*, No. 06-1569 (6th Cir. Feb. 20, 2009) (unpublished); *see also Abela*, 380 F.3d 915; *Burroughs v. Makowski*, 282 F.3d 410, 414 (6th Cir. 2002); *Simpson*, 238 F.3d 399.

Wolfenbarger argues that Kincade "never properly raised" the claims concerning trial counsel "until he filed his motion for relief from judgment in March 2002," pursuant to the federal district court's dismissal without prejudice of his first habeas petition. Resp. Br. at 19. That motion was denied by the Michigan Circuit Court on the grounds that Kincade has not complied with Michigan Court Rule (MCR) 6.508(D)(3)(a)(b), which precludes courts from granting relief to the defendant when a motion "alleges grounds for relief . . . which could have been raised on appeal from the conviction and sentence or in a prior motion under this subchapter, unless the defendant demonstrates (a) good cause for the failure to raise such grounds on appeal or in the prior motion, and (b) actual prejudice from the alleged irregularity that support the claim for relief." The Michigan Court of Appeals and then the Michigan Supreme Court, *Kincade,* 679 N.W.2d 74, denied the application for leave to appeal, with the standard one-sentence order citing failure to establish grounds for relief pursuant to MCR 6.508(D). Resp. Br. at 19.

The Michigan Supreme Court decision does comply with the first and second parts of the *Maupin* inquiry: MCR 6.508(D) is a state procedural rule that Kincade failed to follow, and, following *Alexander,* No. 06-1569, and *Simpson*, 238 F.3d 399, the last "explained" or "reasoned" opinion" of the state court was based on a violation of that state procedural rule. However, MCR 6.508(D) did not constitute an "adequate and independent" ground for that decision.

MCR 6.508(D) is not an adequate ground in this case because it was not a "firmly established and regularly followed" rule at the time when Kincade would have violated it. MCR 6.508(D) entered into effect on October 1, 1989, significantly altering Michigan's procedural architecture for criminal appeals and post-conviction relief. As the Michigan Supreme Court explains:

> Before October 1, 1989, the procedure for collateral review of criminal convictions in Michigan did not make any provision for finality of judgments. As a consequence, defendants could, and did, repeatedly seek relief without limitation. To create a uniform system of procedure, Michigan Court Rules 6.501 *et seq*. were enacted. The rules present a carefully balanced scheme that liberally permits the assertion of claims on direct appeal, whether timely or not, while at the same time introducing a concept of finality to discourage repeated trips up and down the appellate ladder.

*People v. Reed*, 535 N.W.2d 496, 503 (Mich. 1995). We have declined "to adopt any *per se* approach for pinpointing when MCR 6.508(D) became 'firmly established' with respect to all habeas petitioners." *Luberda v. Trippett*, 211 F.3d 1004, 1008 (6th Cir. 2000). Instead, we "decide on a case-by-case basis whether, during the period that a defendant may, if he wishes, tailor his [direct] appeal to avoid the consequences of a state procedural rule, the defendant . . . could . . . be deemed to have been apprised of [the procedural rule's] existence." *Ibid.* (citing *Ford v. Georgia*, 498 U.S. 411, 423 (1991)) (internal quotation marks omitted). In that case, we found that although Luberda's conviction occurred prior to the enactment of MCR 6.508, "there was no reason why Luberda could not have requested permission to add the constitutional arguments raised in the present petition prior to the submission of his direct appeal in November 1990. There was a period of 13 months in which he might have done so." *Ibid*. By contrast, in *Gonzales v. Elo*, we held that MCR 6.508 was not a firmly established rule in the case of a habeas petitioner whose conviction was affirmed by the Michigan Court of Appeals in January 1986, prior to the enactment of the rule. 233 F.3d 348, 354 (6th Cir. 2000).

In this case, the Michigan Circuit Court stated that Kincade "had every opportunity to raise any issue he had" regarding ineffective counsel either on direct appeal or "to the Court of Appeals,"

without specifying the particular appearance before the Court of Appeals at issue. *People v. Kincade*, No. 85-002809-01 (Mich. Cir. Ct. Oct. 21, 2002). However, Kincade's conviction, direct appeal and the final decision on his direct appeal (August 3, 1987) all occurred prior to the effective date of MCR 6.508. Moreover, his second motion for a new trial, which came before the Court of Appeals and eventuated in a remand by the Michigan Supreme Court for a *Ginther* hearing, was filed on September 23, 1989 – also prior to the effective date of MCR 6.508. While the Michigan courts are less than clear with respect to when Kincade could or should have raised these claims, we think Kincade could not "be deemed to have been apprised of" MCR 6.508 at the relevant times. Thus, his ineffectiveness-of-trial-counsel claims are not procedurally defaulted. Because these claims are not procedurally defaulted and Michigan courts have not considered them on the merits, this court's review is de novo. *Murphy*, 551 F.3d at 494 (citing *Hartman v. Bagley*, 492 F.3d 347, 356 (6th Cir. 2007)).

## C

To establish that counsel has been ineffective, a defendant must show that (1) "counsel's performance was deficient," and (2) "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish constitutionally deficient performance, a defendant must demonstrate "that counsel's representation fell below an objective standard of reasonableness." *Id*. at 688. To establish prejudice, a defendant must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.

We have held that "incompetently advising a defendant to go to trial rather than plead guilty may amount to the ineffective assistance of counsel." *Tyler v. United States*, No. 97-1616, 1998 U.S. App. LEXIS 27085, at *6-7 (6th Cir. 1998) (citing *Turner v. Tennessee*, 858 F.2d 1201, 1205 (6th Cir. 1988)). To establish that advice with regard to a guilty plea had a prejudicial effect under *Strickland*, a defendant must establish "a reasonable probability that, but for counsel's errors, he would . . . have pleaded guilty and would [not] have insisted on going to trial." *Turner*, 858 F.2d at 1206 (quoting *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985)).

During plea negotiations, the state offered to dismiss Kincade's first-degree murder charge if he pleaded guilty to second-degree murder, with no specific sentence recommendation. Kincade claims that he was prejudiced by trial counsel's deficient performance because counsel did not know, and therefore did not inform Kincade, that the under state sentencing guidelines, a plea to second-degree murder would have resulted in a recommended sentence of twelve years to life with the possibility of parole. Appellant's Br. at 16.

At the *Ginther* hearing, Kincade's trial attorney testified that he did not know whether the sentencing guidelines were applicable at the time, although case law indicates that the guidelines were in effect and that they were advisory. *Kincade*, 2007 U.S. Dist LEXIS 33944, at *11 (citing *People v. James*, 368 N.W.2d 892, 893 (1985)). Even if ignorance of the applicable sentencing guidelines amounted to deficient assistance of counsel, Kincade cannot establish that this deficiency prejudiced his decision with regard to the plea. His trial counsel testified that Kincade was not interested in pleading guilty, a proposition that finds ample support in the record. Kincade indeed stated, at the 1991 *Ginther* hearing and at some points prior to trial, that he was interested in pleading

guilty. However, he ultimately rejected, on the record and before trial, the state's plea offer on terms that he understood to be at least as attractive as the ones his counsel would have presented to him had counsel been aware of the state guidelines. On the first day of trial, after Kincade indicated that he "might not want to go ahead with his trial" and take the plea, the court questioned the parties about the plea offer:

> Mr. Slameka [counsel for Kincade]: . . . Mr. Kincade asked me if I could get him a plea. I told him the only plea that's being offered is second degree murder. He asked me about a sentence. I said there's been no sentence offered whatsoever. The statute, as I read it after the Supreme Court decision, indicates he gets anywhere from one year and a day up to life.

> Mr. Reynolds [prosecution]: Anywhere from a microsecond to life.
> . . .

> Mr. Slameka: However, you did tell me if he had some information that might be helpful to the police, that that might be a consideration in his sentence. Am I not correct?

> Mr. Reynolds: That certainly stands to reason. It's logical. It's not part of any plea agreement . . .

Kincade initially indicated that he wanted to take this plea, but when he was given the guilty-plea form to sign, he declined, stating that he "can't do this." He was offered – and rejected – a plea with a sentence that he understood to range from "a microsecond to life," plus whatever reduction he may have been granted for cooperation with the police. There is no reasonable probability that Kincade would have agreed to a plea with the likely sentence ranging from twelve years to life, when he did not agree to a plea with a sentence ranging from a "microsecond" to life. Because Kincade does not establish that his trial counsel's performance prejudiced him with regard to the plea offer, we need not decide whether counsel's performance was in fact deficient.

**D**

Kincade also claims that trial counsel was ineffective because he failed to object to the use of Thomas's guilty plea, which was improperly employed by the prosecutor as substantive evidence of Kincade's guilt. We have held that "a failure to object to prosecutorial misconduct can amount to ineffective assistance of counsel." *Hodge v. Hurley*, 426 F.3d 368, 377 (6th Cir. 2005) (citing *Gravley v. Mills*, 87 F.3d 779, 785-86 (6th Cir. 1996)). To succeed on this claim, Kincade needs to establish that prosecutorial misconduct has taken place, that his trial counsel's failure to object to it was deficient, and that this failure prejudiced the defense.

During opening statements, the prosecutor described Thomas's plea bargain, emphasizing that "while Thomas was getting 'something out of it [i.e. testifying against Kincade],' he was also a person who 'did something wrong' but was going 'to face up to it.'" *Kincade*, 412 N.W.2d at 253. The prosecutor questioned Thomas extensively about the plea at the beginning of Thomas's direct testimony, to which Kincade's attorney did not object; instead, the attorney inquired about the reduced charge and "suggested that Thomas' guilty plea was 'no big deal' because he had violated his parole and likely would have gone to prison anyway." *Ibid*. Thomas's plea agreement was introduced as an exhibit without objection from defense. During closing arguments, the prosecutor sought to impress on the jury the import of Thomas's plea. If Kincade acted in self-defense, the prosecutor asked, Thomas too would have a defense – he was "helping someone defend himself" – and would not "book[] the next five years in prison." *Id*. at 84.

We have explained that although guilty pleas of co-conspirators or co-defendants "are never admissible as substantive evidence of the defendant's guilt," they "may be introduced into evidence

if the co-conspirator or co-defendant testifies at trial, so that the factfinder will have appropriate facts on hand to assess the witness's credibility." *United States v. Sanders*, 95 F.3d 449, 454 (6th Cir. 1996) (internal citations omitted). Kincade maintains that the prosecution went beyond mere disclosure of the plea bargain for the purposes of establishing Thomas's credibility and used his guilty plea as substantive evidence of Kincade's guilt by association. This impropriety prejudiced the outcome of the trial, Kincade argues – all the more so in view of the trial court's failure to give "cautionary instructions" as required by this circuit's law. *Sanders*, 95 F.3d at 454 ("When a guilty plea . . . is introduced into evidence, the . . . court is required to give a cautionary instruction to the effect that the jury may use the conviction or guilty plea only to determine the testifying witness's credibility." ).

We need not decide whether the prosecutor's use of Thomas's guilty plea constituted prosecutorial misconduct or whether Kincade's trial counsel was deficient in failing to object to its use. *See Strickland*, 466 U.S. at 694 (stating that courts need not address both components of the inquiry "if the defendant makes an insufficient showing on one"). Even if we assume that trial counsel was deficient in not objecting to the prosecutor's tactics, Kincade has not established prejudice under *Strickland*. *Strickland*'s prejudice inquiry requires the court to "consider the *totality* of the evidence before the judge or jury." 466 U.S. at 695 (emphasis added). "[T]he prejudice determination," as we clarified, "is necessarily affected by the quantity and quality of other evidence against the defendant." *Hodge*, 426 F.3d at 376. In this case, the quantity and quality of other evidence against Kincade substantially and unambiguously outweighs any evidence for his self-defense theory.

Kincade admitted shooting Taylor. The only issue at trial was whether the shooting was in self-defense. Kincade was the only one to testify in his own defense, claiming that he thought Taylor reached for his gun and that Kincade picked up and kept Taylor's gun after the murder. The police could not find the gun and Kincade could not produce it. Nor could Kincade proffer any evidence, aside from his own testimony, that Taylor made any threatening movements. Kincade's self-defense theory was contradicted by Thomas, who testified that Kincade said that he shot the wrong person and would not get paid, and Branham, who stated that Taylor was not armed. In view of the totality of the evidence, Kincade cannot show that but for his attorney's failure to object to the use of Thomas's guilty plea, there was a reasonable probability that the jury would have harbored reasonable doubt regarding his guilt. Therefore, we affirm the district court's determination that this claim does not warrant granting the writ of habeas corpus.

**IV**

Kincade's final claim alleges ineffective assistance of appellate counsel. An appellate attorney's performance is also evaluated in accordance with the *Strickland* standard. *Mapes v. Tate*, 388 F.3d 187, 191 (6th Cir. 2004). To be constitutionally adequate under *Strickland*, appellate counsel is not required to raise every non-frivolous argument on appeal. *Caver v. Straub*, 349 F.3d 340, 348 (6th Cir. 2003) (citing *Jones v. Barnes*, 463 U.S. 745, 751(1983)). To demonstrate that an appellate attorney has rendered deficient performance under *Strickland*, "the petitioner must demonstrate that the issue not presented 'was clearly stronger than issues that counsel did present.'" *Ibid.* (quoting *Smith v. Robbins*, 528 U.S. 259, 289 (2002)). The prejudice standard in the context of an alleged failure to raise issues on appeal requires showing "a reasonable probability that

inclusion of the issue would have changed the result of the appeal." *Howard v. Bouchard*, 405 F.3d 459, 485 (6th Cir. 2005) (citing *Greer v. Mitchell*, 264 F.3d 663 (6th Cir. 2001)*, cert. denied*, 546 U.S. 1100 (2006)).

The certificate of appealability granted by the district court limited the scope of Kincade's claims about appellate counsel to failure to raise "meritorious claims" on appeal and abandoning claims about trial counsel after being granted a remand. Appellate counsel's failure to raise meritorious claims moreover, is limited to his failure to raise claims " related to the claim[s] about trial counsel" – that is, the same allegations of ineffective trial counsel considered above.

Kincade argues that the abandonment of claims on remand itself constituted ineffective assistance because "[c]ounsel had an obligation to consult with petitioner concerning the remand hearing and by his own admission he failed to do so." Appellant's Br. at 21. At the 1991 *Ginther* hearing, appellate counsel testified that he "advised [Kincade] that his lawyer has a very good reputation as a skilled and excellent trial lawyer and that . . . he could not have possibly done a better job." Appellate counsel further responded in writing to Kincade's inquiry about raising ineffective-assistance claims, explaining that he would raise issues he thought were viable in his professional judgment. *Ibid*. Thus, to the extent Kincade alleges appellate counsel did not consult with him, the record belies the allegation. Moreover, as the district court points out, "[e]ven assuming that [Kincade] was unaware of the state appellate court's remand," appellate counsel's abandonment of claims had no prejudicial effect on Kincade's challenge to his conviction: "[T]he trial court ultimately considered Petitioner's claims about trial counsel and afforded Petitioner an evidentiary hearing on the claims. The trial court determined that Petitioner's trial attorney was not

ineffective, and the Michigan Court of Appeals agreed." 2007 U.S. Dist. LEXIS 33944, at *34.

With regard to the failure to include meritorious claims on direct appeal, Kincade does not establish that counsel's performance was deficient because he does not demonstrate that the omitted claims were "clearly stronger" than the issue actually presented (the improper admission of Thomas's guilty plea). Nor can Kincade demonstrate prejudice from the omission of these claims on direct appeal: had appellate counsel pursued the same claims we now find to lack merit, there is no reasonable probability that the result of the appeal would have changed. Kincade's strongest claim with regard to trial counsel was the latter's failure to object to the prosecution's use of Thomas's guilty plea. *See Kincade*, 2007 U.S. Dist. LEXIS 33944, at *34. A closely related issue, the admission of Thomas's guilty plea, was considered on direct review; a two-judge majority determined on the merits that the plea was not admitted improperly. At the same time, that one of three judges dissented demonstrates the strength of the issue appellate counsel chose to raise. As the district court points out: "The [same] judges in all likelihood would have found no merit in the contention that defense counsel should have objected to the evidence" if the admission of that evidence itself was not improper. *Id*. at *35.

Ultimately, in view of our determination that trial counsel's performance did not prejudice the defense, the conclusion that appellate counsel's failure to raise claims about this same performance likewise caused no prejudice is inevitable. *Greer*, 264 F.3d at 676 ("[B]y definition, appellate counsel cannot be ineffective for a failure to raise an issue that lacks merit."); *Howard*, 405 F.3d at 485.

**V**

For the reasons set forth above, we AFFIRM the district court's denial of a writ of habeas

corpus.