PEOPLE v ALLEN

Docket No. 71658. Argued June 25, 1985 (Calendar No. 17).—Decided December 10, 1985. Rehearing denied *post,* 1205.

David W. Allen was convicted by a jury in the Saginaw Circuit Court, Robert W. Gilbert, J., of first-degree felony murder. The Court of Appeals, Allen, P.J., and Bronson, J. (Wahls, J., dissenting), affirmed in an unpublished opinion per curiam, holding that the admission of evidence of a cofelon's conviction of the same crime was error, but that the error was harmless beyond a reasonable doubt (Docket No. 59964). The defendant appeals.

In an opinion by Justice Ryan, joined by Justices Brickley, Cavanagh, Boyle, and Riley, the Supreme Court *held:*

The standard for determining whether an error in receiving evidence of a cofelon's prior conviction for the same homicide as that for which a defendant is being tried requires reversal is whether the defendant was unfairly prejudiced by the evidence. In this case, the defendant was not.

While the trial court erred in permitting the prosecution to question the cofelon about his conviction of the same homicide, after the evidence was erroneously elicited, defense counsel thoroughly cross-examined the witness, and the trial court promptly instructed the jury that the prior conviction could be considered only as bearing upon the witness' credibility. The trial court later repeated the instruction. In addition, there was overwhelming independent evidence of the defendant's guilt.

Affirmed in part.

Chief Justice Williams, joined by Justice Levin, dissenting, stated that in order to uphold a conviction obtained under circumstances in which a cofelon's credibility was improperly bolstered by his testimony that he was convicted of the same crime for which a defendant was being tried, the error must be

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] Am Jur 2d, Criminal Law §§ 163 *et seq.*
Am Jur 2d, Evidence § 1130.
Am Jur 2d, Homicide §§ 27 et seq.
Prosecution or conviction of one conspirator as affected by disposition of case against coconspirators. 19 ALR4th 192.

found not to have prejudiced the defendant's right to a fair trial.

Opinion of the Court

1. Homicide — Evidence — Conviction of Cofelon.

    The standard for determining whether an error in receiving evidence of a cofelon's prior conviction for the same homicide as that for which a defendant was being tried requires reversal is whether the defendant was unfairly prejudiced by the evidence.

Dissenting Opinion by Williams, C.J.

2. Criminal Law — Evidence — Conviction of Cofelon — Fair Trial.

    *A conviction obtained under circumstances that evidence that a cofelon was convicted of the same crime for which the defendant was being tried was admitted to bolster the cofelon's credibility may be upheld where the error is found not to have prejudiced the defendant's right to a fair trial.*

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *Christopher S. Boyd,* Prosecuting Attorney, and *Annette M. Gray,* Assistant Prosecuting Attorney (*Patrick M. Meter,* Former Chief Assistant Prosecuting Attorney, of counsel), for the people.

State Appellate Defender (by *Peter Jon Van Hoek*) for the defendant.

Ryan, J. The trial court erred in permitting the prosecuting attorney to question the cofelon Salinas about the witness' conviction of first-degree murder for the same homicide for which the defendant was on trial. See *People v Lytal,* 415 Mich 603; 329 NW2d 738 (1982). The standard for determining whether the error requires reversal of the defendant's conviction is whether the defendant was unfairly prejudiced by the evidence. We think he was not.

After the prosecutor erroneously elicited Sali-

nas' acknowledgment that he had been convicted
of killing the deceased, defense counsel thoroughly
cross-examined the witness, fully developing for
the jury the idea that the witness had substantial
motive to testify falsely against the defendant. The
evidence of the murder conviction might well have
impeached Salinas' credibility leading the jury to
believe that, as a convicted murderer, his overall
testimony was unworthy of belief. Moreover, the
trial court promptly instructed the jury that it
might consider the witness' prior conviction only
as bearing upon the witness' credibility. The court
repeated the instruction once again at the conclu-
sion of the evidence.

In addition, the jurors were presented with an
abundance of independent evidence of the defen-
dant's guilt of the crime charged. That evidence
included Allen's own inculpatory statement to
three other persons. On one occasion, Allen admit-
ted to a witness that he had hit the victim with an
ashtray and poured hot water on her face. An-
other witness testified that Allen admitted that he
had gotten blood on his shoe when he hit the
victim with the ashtray. This evidence, together
with testimony of the pathologist that the cause of
death was injury to the head resulting in a cere-
bral concussion, was itself sufficient to permit the
jury to find the defendant guilty of first-degree
felony-murder, *People v Aaron,* 409 Mich 672; 299
NW2d 304 (1980). There was more, however. Two
serologists testified, without objection, that the
blood found on the defendant's shoe was consistent
with the blood type and genetic markings of the
victim, and inconsistent with that of Salinas. One
of the serologists also testified that approximately
five percent of the population would have had the
same blood markings as the victim.

It is true, of course, that Salinas testified in

detail about the defendant's involvement in the homicide, and his credibility was thereafter impeached in the fashion we have described. Nevertheless, although Salinas provided the only eyewitness account of the murder, his testimony was corroborated in part by that of other witnesses. At least two witnesses testified to a conversation with Salinas prior to his arrest in which he described the crime, and several other persons verified the fact that Salinas and Allen were together at a party store prior to the murder. Salinas' description of Allen kicking the knife further into the victim's back was corroborated by the testimony of a technician that he had to "get up on a stool and onto the morgue table, and put my knee against the victim's back in order to extract the knife."

We are satisfied that the evidence of the defendant's guilt of the felony murder of Minnie Ingram is virtually overwhelming. Consequently, the trial court error in receiving evidence of cofelon Salinas' murder conviction did not unfairly prejudice the defendant.

The judgment of the Court of Appeals is affirmed.

BRICKLEY, CAVANAGH, BOYLE, and RILEY, JJ., concurred with RYAN, J.

WILLIAMS, C.J. (*dissenting*). This case involves a determination of the standard of error to be applied when a cofelon's credibility is improperly bolstered by his testimony that he was convicted of the same crime for which the defendant is now on trial. In order to uphold a conviction obtained under such circumstances, the error must be found not to have prejudiced the defendant's right to a fair trial. Because in this case I find that standard was not met, I would reverse the Court of Appeals decision.

## I. FACTS AND HISTORY

On Sunday, February 4, 1979, Minnie Ingram, a sixty-nine-year-old woman, was robbed and killed in her home in Saginaw. She was beaten about the head and stabbed in the face and back. The victim's body was discovered on Monday, February 5, 1979.

The defendant, David Allen, and his cofelon, Jesse Salinas, were seen together in the vicinity of the house before the murder. Salinas was arrested on the day after the murder while taking part in a breaking and entering with two juveniles. Upon being questioned about the murder, Salinas gave two inconsistent statements. Only in the second did he specifically name the defendant as a participant in the crime.

Allen was convicted of first-degree felony murder, MCL 750.316; MSA 28.548, at a trial in which the evidence in large part consisted of the testimony of Salinas. Prior to the presentation of this testimony, Allen had unsuccessfully moved *in limine* to suppress evidence of Salinas' conviction of first-degree murder in the instant killing. At that time, he acknowledged that no deal had been made by the prosecutor in exchange for Salinas' testimony and stated that he did not intend to raise the issue during the trial. Nonetheless, the trial court ruled the evidence "admissible so the jury can have the full facts on judging the credibility of Mr. Salinas." In reaching this conclusion, the trial court explicitly relied on the Court of Appeals decision in *People v Lytal,* 96 Mich App 140; 292 NW2d 498 (1980). That decision was subsequently reversed by this Court. 415 Mich 603; 329 NW2d 738 (1982).

In an unpublished decision issued April 21, 1983, the Court of Appeals, reviewing the decision in

this case after our reversal of *Lytal,* had no difficulty deciding that the admission of evidence of Salinas' conviction was erroneous. However, the Court of Appeals then reviewed the other evidence in the case and held that the error was harmless beyond a reasonable doubt. Judge WAHLS dissented, arguing that the other evidence offered was not sufficiently persuasive to deem the error harmless. We granted leave to appeal. 419 Mich 933 (1984).

## II. APPLICATION OF *LYTAL* TO THIS CASE

In *Lytal,* this Court stated:

> It is an established rule of law that the conviction of another person involved in the criminal enterprise is not admissible at defendant's separate trial. The prosecutor defends the admission of this evidence on the ground that under the rule of *People v Atkins,* 397 Mich 163; 243 NW2d 292 (1976), he was obliged to show the nature of any consideration offered for the testimony of Diaz and Tackleberry.
>
> Diaz and Tackleberry testified, however, that no promises were made to them—there was no consideration.
>
> The prosecutor is not obliged to show that no consideration was offered for a witness's testimony or, indeed, whether the witness, if charged and if an accomplice, was convicted or acquitted. The prosecutor is only obliged to disclose any consideration offered to or received by the witness. That can be done without adverting to whether the witness was, if charged, convicted. [415 Mich 612.]

This case presents an almost identical set of facts. The prosecutor was allowed to bolster the credibility of the witness, Salinas, by demonstrating that he had already been found guilty of the

crime and therefore would receive no leniency for his testimony.[1]

### III. STANDARD OF REVIEW FOR *LYTAL* ERROR

If an error prejudiced the defendant's right to a fair trial, this Court must reverse the conviction. See, *e.g., People v Smith,* 363 Mich 157, 164; 108 NW2d 751 (1961). The statutory harmless-error provision[2] does not eliminate the responsibility of the reviewing court to make this determination.

> The statutory provision may mollify minor errors which clearly can be held not to affect the result, but it is not a cure-all and it must serve within constitutional limitations. It cannot cure an error which deprives an accused of the right of due process of law. . . . We are constrained to hold that the charge complained of deprived the defendant of his constitutional right of a free trial by jury. [*People v Bigge,* 297 Mich 58, 72; 297 NW 70 (1941).]

I am unable to find that the defendant's right to a fair trial was not prejudiced.

The evidence against Allen, excluding the testimony of Salinas, was not sufficient to support a conviction of first-degree felony murder. Four

[1] We note that on appeal the state argues that there was consideration given for Salinas' testimony, as he was assured that his statements at the defendant's trial would not be used against him at his retrial. Even if this were the case, the jury could be advised of this without informing them that the defendant had already been convicted.

[2] "No judgment or verdict shall be set aside or reversed or a new trial be granted by any court of this state in any criminal case, on the ground of misdirection of the jury, or the improper admission or rejection of evidence, or for error as to any matter of pleading or procedure, unless in the opinion of the court, after an examination of the entire cause, it shall affirmatively appear that the error complained of has resulted in a miscarriage of justice." MCL 769.26; MSA 28.1096.

prison inmates related statements supposedly made by Allen to them about the killing. However, these statements contradicted each other on the crucial issue of the defendant's involvement in the killing. Testimony that Allen and Salinas were together at some point on the day of the murder is of little value in determining what occurred later. The statement made by one of the juveniles arrested with Salinas that Salinas said his accomplice in the killing "was a colored guy" does not identify the defendant with any degree of particularity. The final piece of evidence, an analysis of a bloodstain on Allen's shoe, merely showed it to be of the same general type as that of the deceased.

Salinas' testimony was crucial. He provided the only eyewitness account of the crime and described in detail the defendant's involvement and intent during the killing. On the stand, Salinas testified that he and the defendant broke into Minnie Ingram's house and killed her. He admitted that he rendered the victim unconscious, but stated that Allen attempted to suffocate her with a pillow, beat her over the head with an ashtray, stabbed her with a steak knife, and tried to set the house on fire. He further stated that when he tried to remove the knife from the victim's back, Allen kicked it in farther with the heel of his foot.

Because Salinas' testimony was so important, his credibility was a key issue in the jury's determination of Allen's guilt. His credibility was damaged by his earlier inconsistent statements regarding the defendant's role in the crime. Any improper bolstering cannot therefore be regarded as harmless in this instance.

For these reasons, I am unable to concur with the Court of Appeals. I agree with Judge WAHLS that the other evidence presented at trial was not

so overwhelming as to negate any possible preju-
dice to the defendant arising from the error. I
would therefore reverse the defendant's conviction
and remand for a new trial.

LEVIN, J., concurred with WILLIAMS, C.J.