PEOPLE v KINCADE

Docket No. 87905. Submitted January 14, 1987, at Detroit. Decided
      August 3, 1987.

   Dennis J. Kincade was convicted of first-degree murder and
   possession of a firearm during the commission of a felony
   following a jury trial in Detroit Recorder's Court, Michael J.
   Talbot, J. Defendant appealed claiming error in the trial
   court's admission of evidence of a testifying accomplice's guilty
   plea to a lesser charge arising from the same incident that led
   to defendant's prosecution.

      The Court of Appeals *held:*

      It is not error for the prosecutor to elicit on direct examina-
   tion of a testifying accomplice, or during opening or closing
   arguments to remark upon, the fact that the testifying accom-
   plice pled guilty pursuant to a bargain with the prosecutor.
   However, use of evidence of the accomplice's plea-based convic-
   tion as substantive evidence of the defendant's guilt would be
   error requiring reversal. In this case, the evidence of the
   accomplice's conviction was not used as substantive evidence of
   defendant's guilt but, rather, to refute defendant's claim of self-
   defense.

      Affirmed.

      R. M. MAHER, P.J., dissented. He would hold that any evi-
   dence negating defendant's claim of self-defense would be sub-
   stantive evidence bearing on defendant's guilt and would thus
   hold that it was error for the trial court to admit evidence of
   the testifying accomplice's conviction. Judge MAHER would
   reverse defendant's conviction.

1. CRIMINAL LAW — WITNESSES — ACCOMPLICES — FAVORABLE TREAT-
      MENT — DISCLOSURE.

   Where an accomplice or coconspirator has been granted immu-
   nity or other leniency to secure his testimony, or has a reason-

REFERENCES

Am Jur 2d, Criminal Law § 166.
Am Jur 2d, Evidence §§ 1148 *et seq.*
Am Jur 2d, Witnesses §§ 103, 498, 560.
See the annotations in the Index to Annotations under Accomplices.

able expectation of such leniency, it is incumbent upon the
prosecutor and the trial court to disclose such facts to the jury
upon request of the defendant.

2. CRIMINAL LAW — WITNESSES — ACCOMPLICES — PLEA BARGAINS.
    It is not error for the prosecutor to elicit on direct examination of
    a testifying accomplice, or during opening or closing arguments
    to remark upon, the fact that the testifying accomplice pled
    guilty pursuant to a bargain with the prosecutor; however, use
    of evidence of the accomplice's plea-based conviction as substan-
    tive evidence of the defendant's guilt would be error requiring
    reversal.

*Frank J. Kelley,* Attorney General, *Louis J.
Caruso,* Solicitor General, *John D. O'Hair,* Prose-
cuting Attorney, *Timothy A. Baughman,* Chief of
the Criminal Division, Research, Training and
Appeals, and *Virginia J. Hazen,* Assistant Prose-
cuting Attorney, for the people.

*Gerald S. Surowiec,* for defendant on appeal.

Before: R. M. MAHER, P.J., and SHEPHERD and
G. S. ALLEN, JR.,* JJ.

SHEPHERD, J. The jury convicted defendant of
first-degree murder and possession of a firearm
during the commission of a felony and acquitted
him of assault with intent to murder. Defendant
appeals, arguing that admission of evidence of his
accomplice's guilty plea to a lesser charge arising
out of the same incident was error. We affirm.

Most of the persons in this case were involved
with the sale of drugs. Defendant was tried for the
shooting death of Kevin Taylor. Glenn Thomas
was also charged with first-degree murder and
assault with intent to commit murder for the same
incident. Approximately three weeks before defen-
dant's trial, however, Thomas pled guilty to as-

* Former Court of Appeals judge, sitting on the Court of Appeals by
assignment.

sault with intent to do great bodily harm, for which he received a sentence of from five to ten years in prison. In exchange, he agreed to testify against defendant and another potential defendant.

Thomas testified that defendant received a call while they were moving some items and they went to Frederick Blakely's home. Blakely gave defendant a gun. Defendant asked Thomas to come along and the three went down an alley to where Taylor stood talking with Carl Branham. Thomas concluded that defendant was going to rob them. Defendant called for Taylor and Branham to "come here" and then told Thomas to grab Branham. Defendant pulled out the gun and fired two shots at Taylor and two or three shots at Branham as he ran away. Taylor died, but Branham was not hit. Thomas saw no weapons on Taylor or Branham at any time, nor did they make any threatening gestures towards defendant. According to Thomas' testimony, defendant later told Thomas that he shot the wrong person and would not get paid. Branham's description of the shooting was similar to Thomas', and Branham indicated that he and Taylor had talked to Blakely about selling drugs a short time before the shooting.

Defendant testified, however, that he received a call from someone named Roy and went to Blakely's house to pick up money Taylor owed him from a drug deal. Blakely told defendant that Taylor had just left, and had money and a pistol. Defendant borrowed Blakely's gun and held it visible in his hand as he walked towards Taylor, though defendant said it was at his side. Taylor walked towards defendant and told him he had no money. Defendant told Thomas to watch Branham and to hold him. As Taylor approached, defendant thought he was reaching for a gun and was going

to shoot defendant, so he fired two shots. Taylor's
gun fell to the ground. Defendant fired two more
shots in the air. He then picked up and kept
Taylor's gun.

During voir dire, both the prosecutor and de-
fense counsel alluded to the fact that one witness
would be a "snitch" who had received "some con-
siderations" or a "break" for testifying. During
opening statements, however, the prosecutor fully
described Thomas' plea bargain, emphasizing that
Thomas would go to prison whatever the outcome
of defendant's trial. The prosecutor also empha-
sized that, while Thomas was getting "something
out of it," he was also a person who "did some-
thing wrong" but was going "to face up to it."
Defense counsel did not object. The prosecutor
fully questioned Thomas concerning his plea-based
conviction on the reduced charge at the beginning
of Thomas' direct testimony. Defense counsel did
not object and, in fact, inquired briefly about the
reduced charge and suggested that Thomas' guilty
plea was "no big deal" because he had violated his
parole and likely would have gone to prison any-
way. On redirect examination, however, Thomas
indicated that no bargain had been struck as to
parole violations. Thomas' plea agreement was
introduced as an exhibit. Defense counsel indi-
cated he had no objection.

During the conference on instructions, the prose-
cutor requested the accomplice standard jury in-
structions. Defense counsel objected to that portion
of CJI 5:2:01 concerning the fact that Thomas had
been convicted of charges arising out of the same
incident, arguing that such an instruction was
improper under *People v Lytal,* 415 Mich 603; 329
NW2d 738 (1982).

The prosecutor stressed Thomas' guilty plea dur-
ing closing argument, comparing Thomas' and

Branham's versions of the story with defendant's claim of self-defense:

> Perhaps one of the most telling things about whether or not this really was self-defense is from the fact that Mr. Thomas took a deal to testify. If this was really self-defense on the part of Mr. Kincade, do you think that Mr. Thomas would have booked the next five years in prison. Because if this was really self-defense on Mr. Kincade's part, he would have a defense. He'd be able to say, I was helping someone defend himself. Use your common sense and reason, ladies and gentlemen. You are in a position where you're not guilty of anything. Are you going to go and put yourself away for five to ten years.

At the conclusion of his argument, the prosecutor again asked the jury to consider "if this really was self-defense, why would he put himself away for five to ten years." Defense counsel made passing references to Thomas' "deal" during closing argument. In rebuttal closing argument, the prosecutor urged the jury to read the plea agreement during deliberations.

The accomplice instructions given did not refer to Thomas' plea-based conviction.

Where an accomplice or coconspirator has been granted immunity or other leniency to secure testimony, or has reasonable expectation of such leniency, it is incumbent upon the prosecutor and trial court to disclose such facts to the jury upon defendant's request. *People v Atkins,* 397 Mich 163, 173; 243 NW2d 292 (1976). The general rule, however, is that the conviction of another person involved in the criminal enterprise is not admissible at defendant's separate trial, *Lytal, supra* at 612:

> The prosecutor is not obliged to show that no

consideration was offered for a witness's testimony or, indeed, whether the witness, if charged and if an accomplice, was convicted or acquitted. The prosecutor is only obliged to disclose any consideration offered to or received by the witness. That can be done without adverting to whether the witness was, if charged, convicted.

In a case involving a trial-based conviction, the standard for determining whether the error requires reversal is whether the defendant was unfairly prejudiced by the evidence. *People v Allen,* 424 Mich 109; 378 NW2d 481 (1985).

This Court has held that *Lytal* does not apply to cases involving plea agreements, wherein recitation of the consideration offered necessarily includes "a reference to the accomplices' pleas to a reduced charge." *People v Buschard (On Remand),* 129 Mich App 160, 164; 341 NW2d 260 (1983). See also Justice BOYLE's plurality opinion in *People v Standifer,* 425 Mich 543, 552-555, 559-560; 390 NW2d 632 (1986), joined by two other Justices. The numerous problems created by attempts to reconcile *Lytal, Atkins,* and *Standifer* are discussed well in the recent case of *People v Rosengren,* 159 Mich App 492; 407 NW2d 391 (1987), another case finding no error in the admission of a testifying accomplice's plea bargain. *Rosengren* also found no manifest injustice.

No logical connection exists between the accomplice's guilt as reflected by his guilty plea and the question whether defendant fired the shots. Thomas' guilty plea cannot be used to infer defendant's guilt as to the shooting. The use of Thomas' plea as substantive evidence of defendant's guilt would require reversal. See *People v Eldridge,* 17 Mich App 306, 316-317; 169 NW2d 497 (1969). See also *Standifer, supra* at 552, n 4 (BOYLE, J.); *People*

v *Crawl*, 401 Mich 1, 33, ns 24, 25; 257 NW2d 86 (1977) (LEVIN, J.).

Such is not the case here, however, because defendant admitted the shooting. What we have instead is a self-defense claim, the validity of which involves a perception of the totality of the circumstances, including threats allegedly made to defendant. Thomas, however, testified that Taylor did not threaten defendant. We believe the prosecutor's argument in this case can reasonably follow from that evidence. It appears that Thomas' guilty plea has at least some minimal logical connection to the proofs concerning the circumstances surrounding Taylor's death.

An argument could probably have been made by defendant that the guilty plea bears no logical connection to defendant's self-defense claim. If no logical connection existed as a matter of law, we believe reversal would be required. Defendant might also have argued that the evidence was more prejudicial than probative under the circumstances.

Defendant did not object, however, save at the instructions conference and only on the basis of *Lytal.* Any error from the prosecutor's argument could have been promptly cured. Defendant offered nothing to refute the minimal logical connection we find in the argument. Given this connection and the fact that the evidence was not used as substantive evidence of defendant's guilt but, rather, to refute the self-defense theory, we cannot conclude that defendant was unfairly prejudiced or that manifest injustice occurred.

Affirmed.

G. S. ALLEN, JR., J., concurred.

R. M. MAHER, P.J. *(dissenting).* As the majority

has acknowledged, the use of Thomas' plea as substantive evidence of defendant's guilt would require reversal. *People v Eldridge,* 17 Mich App 306, 316-317; 169 NW2d 497 (1969). The majority then reasons that, because the evidence was merely used to negate self-defense, it is not substantive evidence of defendant's guilt. I cannot concur in the latter proposition.

A defendant commits no crime when he acts in self-defense. LaFave & Scott, Criminal Law (1st ed), § 53, p 391. Cf. *People v Deason,* 148 Mich App 27; 384 NW2d 72 (1985) (imperfect self-defense). Moreover, the prosecution bears the burden of excluding the possibility that the defendant acted in self-defense. *People v Bell,* 155 Mich App 408, 413; 399 NW2d 542 (1986), and cases cited therein.

The prosecution is not precluded from indicting a defendant, bringing the matter on for trial or submitting any evidence to the jury because a defendant acted in self-defense. In short, there is nothing procedural or technical about self-defense. Self-defense goes to the very heart of the alleged criminal act. Any evidence which negates self-defense is clearly substantive.

I would therefore reverse defendant's conviction.