*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
August 10, 2023

Plaintiff-Appellee,

v

No. 359751
Genesee Circuit Court
LC No. 16-040388-FC

ANTRONE TYWONE WILSON,

Defendant-Appellant.

Before: PATEL, P.J., and BOONSTRA and RICK, JJ.

BOONSTRA, J. (*dissenting*).

I respectfully dissent. A jury convicted defendant of first-degree premeditated murder, MCL 750.316(1)(a), and related offenses after he and Rashad Green fired their guns at a passing vehicle. The driver of that vehicle, Antoinne Murphy, and his two passengers were on their way to a relative's house to play cards. Bullets struck Murphy in the head and in the upper back; the head wound was fatal. At least fifteen shell casings were recovered from the scene; they came from two different-caliber weapons. Evidence at trial suggested that defendant may have mistaken Murphy for a member of the College Street Boys gang. Defendant claimed self-defense. A jury rejected his defense and found him guilty. The majority grants defendant a do-over. I disagree and would affirm the jury's verdict and defendant's convictions.

Was Murphy's trial perfect? Perhaps not. But "[o]ur criminal justice system guarantees an accused the right to a fair trial, not a perfect one." *People v Kabongo*, 507 Mich 78, 122 n 90; 968 NW2d 264 (2021), and therefore a criminal conviction "will only be set aside where [an] error results in a miscarriage of justice." *Id*. at 122. A "miscarriage of justice" means that "after an examination of the entire cause, it shall affirmatively appear that it is more probable than not that the error was outcome determinative." *Id*. at 122-123 (internal quotations omitted); MCL 769.26 ("No judgment or verdict shall be set aside or reversed or a new trial granted by any court of this state in any criminal case, on the ground of the misdirection of the jury, or the improper admission or rejection of evidence, or for error as to any matter of pleading or procedure, unless in the opinion of the court, after an examination of the entire cause, it shall affirmatively appear that the error complained of has resulted in a miscarriage of justice.").

-1-

# I. STANDARD OF REVIEW

The majority correctly notes that defendant's arguments are unpreserved, and that defendant therefore must show plain error affecting defendant's substantial rights. *People v Abraham,* 256 Mich App 265, 274-275; 662 NW2d 836 (2003) (footnote omitted). This means that defendant must show that the error prejudiced him by affecting the outcome or seriously affecting the fairness, integrity, or public reputation of the judicial proceedings independent of defendant's innocence. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999). I disagree that this standard has been met in this case.

# II. THE EVIDENCE AT TRIAL

Although the majority does not discuss in detail the evidence presented at trial, I think it important to do so, as it provides context that demonstrates why defendant's argument must fail. The evidence presented at defendant's trial included the following. Justice Thomas (Justice) testified that she was Murphy's ex-girlfriend and the mother of his daughter. She was present at her godmother's house at the time Murphy drove by the house at the time of the shooting. She was also the sister of Dontez Thomas (Dontez). Dontez, along with Donald Davis and Rashad Green, was with defendant in his vehicle at the time of the shooting. Justice owned a Draco[1] firearm, and defendant and Dontez knew of it and had full access to her home. After initially lying to the police about who had come to pick her up from her godmother's house, Justice admitted that Dontez was present at the shooting and that she had lied to protect her "brothers."[2] Dontez testified that Justice had arranged for him and defendant to pick up Justice from her godmother's house. Dontez, along with defendant, Green and others, had been at Justice's apartment, smoking marijuana. A nine-millimeter handgun and the Draco firearm were on a coffee table in the basement. Defendant picked up the nine-millimeter; Green picked up the Draco. Defendant, Dontez, Green, and Davis left to pick up Justice. Defendant brought with him the nine-millimeter handgun, which he initially placed in a heat vent in the car. Green had Justice's Draco firearm in the backseat. Dontez testified that, as their vehicle was parked in the driveway outside the home, Murphy's vehicle came down the street, defendant exited his vehicle with his nine-millimeter handgun, defendant exchanged "fighting words" with the driver of the other vehicle (Murphy), and Dontez then heard about 10 gunshots before Green exited the vehicle and also began firing. Dontez believed that defendant fired off the entire magazine of the nine-millimeter handgun, or 30 bullets; he heard the Draco fire five times. Defendant then re-entered the vehicle, handed his gun to Dontez to reload it, and said, "I think I got him." A 911-caller reported that there had been a murder and that one of the occupants of Murphy's vehicle, Shaquila Pea,[3] had told her that the

---

[1] A Century Arms Draco is a firearm styled like a miniature AK-47 rifle; it is sometimes called an "AK pistol."

[2] Not only was Dontez her biological brother, but Justice was also good friends with defendant and Green and considered them to be her brothers.

[3] Pea testified about the incident and that no gun was present in Murphy's vehicle. The other occupant of Murphy's vehicle could not be located.

persons responsible were "his baby mama's people or something." Multiple shell casings recovered from the driveway were from nine-millimeter ammunition; four shell casings recovered from the street were from 7.62 x 39 mm caliber ammunition (as is used in a Draco firearm). A shell casing for the 7.62 x 39 mm caliber ammunition tested positive for DNA associated with Green; DNA was not detected on the nine-millimeter casings. The bullets that struck Murphy were consistent with having been fired by a nine-millimeter handgun. Defendant's cell phone records placed him in the area at the time of the shooting. There was no evidence that defendant's vehicle had been shot at or struck by a bullet.

Justice, Dontez, and Green were also charged in connection with the incident. Justice was charged with obstruction of justice and lying to a peace officer, and she testified at defendant's trial in anticipation of a plea deal. Dontez pleaded guilty of accessory after the fact, MCL 750.505, under a plea agreement and also testified at defendant's trial. It was anticipated by both the prosecution and the defense that Green would also be called to testify at defendant's trial. Green had pled guilty to assault with intent to commit murder, MCL 750.83, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b, and information regarding his guilty plea therefore would have been admissible for purposes of impeachment. *People v Manning*, 434 Mich 1, 14; 450 NW2d 534 (1990). At the end of the eighth day of trial, the trial court informed the attorneys that the jail had been advised to bring Green over on the following Tuesday morning so that he would be available if either party decided to call him to testify. The court advised the parties to contact Green's lawyer if they intended to call him as a witness.

The next day, Detective Stacy Moore testified that Green had pleaded guilty to assault with intent to commit murder in connection with this incident, and his plea agreement was admitted into evidence without objection. At the conclusion of Detective Moore's testimony, the court asked some follow-up questions to Detective Moore about Green's plea agreement:

> *THE COURT*: All right. I had a couple quick questions. I just want this as a point of clarification. It was exhibit 133, and I may need that for the witness. Rashad Green, what did he—what was your—if you recall from this morning, your answer to what his plea deal, what he pled to?
>
> *THE WITNESS*: Assault with intent to murder.
>
> *THE COURT*: And?
>
> *THE WITNESS*: CCW was going to be—
>
> *THE COURT*: All right. Can I—
>
> *THE WITNESS*: I think—
>
> *THE COURT*: Counsel, do you have exhibit 133, please?
>
> *MS. CLARK*: Yeah, I, I—
>
> *THE WITNESS*: Oh, no, CCW was dismissed. I apologize. I was—

*THE COURT*: You don't have—

*THE WITNESS*: Reading it wrong.

*THE COURT*: Need to apologize. I just—that's why—

*THE WITNESS*: Yeah.

*THE COURT*: That's why I'm clarifying.

*THE WITNESS*: Yes, I believe I read it wrong this morning.

*THE COURT*: All right. So, if I'm looking at this exhibit 133, the People will dismiss count two, CCW, defendant will plead guilty to amended count one and count three, which was felony firearm?

*THE WITNESS*: Okay. Yes, ma'am.

*THE COURT*: Does that sound—

*THE WITNESS*: Yes, that sounds—

*THE COURT*: Okay.

*THE WITNESS*: Correct.

*THE COURT*: All right. So you were just—I just wanted to make sh—and I always like to make sure that we get it right.

*THE WITNESS*: Yes.

*THE COURT*: So—

*THE WITNESS*: That is correct, ma'am.

*THE COURT*: Okay. So I just wanted to clarify that. . . .

Shortly thereafter, after the prosecution rested and the jury was excused for the day, defense counsel stated that he was "leaning toward calling Rashad Green." The court discussed when Green would likely be brought over from the jail to testify and mentioned that defense counsel needed to notify Green's counsel that he would be called to testify.

The next day, defense counsel again confirmed that the only witness he intended to call was Green. The court's staff contacted the jail and arranged for Green to be brought over from the jail at 10:30 a.m. Defense counsel also informed the court that he had notified Green's attorney that defendant anticipated calling Green and that Green's attorney had given his approval. The court's staff had also contacted Green's attorney to advise him that Green would be brought over from the jail at 10:30 a.m. A short time later, however, while discussing the jury instructions for

-4-

prior convictions, defense counsel explained in the following exchange that he might not call Green to testify:

> *MR. SCOTT [defense counsel]*: And I'm assuming that when they, when we're talking about prior conviction, we're talking about prior to this case.

> *MS. CLARK [the prosecutor]*: Mmm-hmm.  I agree with you.  I, I, I don't think it's applicable at this point.  However, it may become applicable after Mr. Green testifies.  So perhaps we could just take 5.1 under advisement or table the discussion until after the close of proofs?

> *MR. SCOTT:* Why don't we, why don't we take it out and then we can add it, we can add it if, if Green testifies.

> *MS. CLARK:* Okay.

> *MR. SCOTT:* See, I don't, I don't want to, I don't want to run into the problem that you did, okay, with your witness, D.J. [Donald Davis].  You know, I don't want him to come in here and say he's taking the fifth.  I don't want that.  So—

> *MS. CLARK*: I'm okay with—

> *MR. SCOTT*: And I haven't, I haven't had an opportunity to interview him.

> *MS. CLARK*: Same.

> *MR. SCOTT*: Pardon me?

> *MS. CLARK*: You did have an opportunity?

> *MR. SCOTT*: I did not.

> *MS. CLARK*: Yeah.  Same.

> *MR. SCOTT*: You know, so—

> *MS. CLARK*: It's going to be a shock to all of us what he says.

> *MR. SCOTT*: And, and I don't want to be shocked.  I like to—

> *MS. CLARK*: I—

> *MR. SCOTT*: You know—

> *MS. CLARK*: I agree.

> *MR. SCOTT*: I, I was hoping, Judge, is that I was going to be able to interview him once [Green's counsel] got here and his client got here, but if

[Green's counsel] takes the same position as he did with the, with the prosecutor, or if he takes, or if Mr. Green takes the same position with me as he took with the prosecutor, then I think that might pose a problem, you know.

> *MS. CLARK*: I'm, I'm okay with taking it [the instruction] out now, Judge, and if he testifies, I'll ask—

> *MR. SCOTT*: Then we—

> *MS. CLARK*: For it—

> *MR. SCOTT*: Can add it.

> *MS. CLARK*: After the proofs.

> *MR. SCOTT*: Okay.

The court agreed that they would address the instruction at issue if Green testified. When the court asked if the defense intended to call "the witness," defense counsel responded:

> I'm talking to my client now, Judge. I know I'm not going to call my client. I think we put that on the record and [Green's counsel] I thought said that he had a matter over in Judge Latchana's at 1:00 o'clock.

> And it's my understanding is that we're going to get started, I thought we were going to get started at 1:00 o'clock, at least that's what I told him. But, if I needed him, that I would come get him. So but I'm leaning towards, Judge, and that's what I'm discussing with my client, is that we will not call any witnesses and we're ready for closing argument.

The court told defense counsel that it would give him and his client as much time as they needed to discuss the matter. When it was time for the defense to present its case, the defense declined to call any witnesses. The jury convicted defendant as described.

## III. ANALYSIS

The majority correctly rejects defendant's argument that evidence of Green's guilty plea was introduced as substantive evidence of defendant's guilt.[4] To the contrary, as the majority acknowledges, the record reflects that both parties contemplated that Green would be called as a witness, and that defense counsel expressed his intent to call Green as a witness if the prosecution did not. As the majority aptly states, "The testimony regarding Green's guilty plea focused on the terms of Green's plea agreement and the consideration he received for entering a plea. This was

---

[4] For the same reasons, the majority correctly rejects defendant's argument that his trial counsel was constitutionally ineffective in failing to object to the introduction of Green's guilty plea. The majority also correctly rejects a number of additional arguments raised by defendant on appeal.

a permissible basis for introducing such evidence, since the parties anticipated that Green would be called as a witness. Thus, the initial introduction of this evidence does not qualify as plain error." See *People v Kincade*, 162 Mich App 80, 84-86; 412 NW2d 252 (1987) ("*Kincade I*") ("Where an accomplice or co-conspirator has been granted immunity or other leniency to secure testimony, or has reasonable expectation of such leniency, it is incumbent upon the prosecutor and trial court to disclose such facts to the jury upon defendant's request.").

Nonetheless, the majority then concludes that because Green ultimately was not called to testify, the prosecution's references to the guilty plea during closing and rebuttal arguments unduly prejudiced defendant. I disagree. A prosecutor's remarks must be considered in context, and "an otherwise improper remark may not rise to an error requiring reversal when the prosecutor is responding to the defense counsel's argument." *People v Kennebrew*, 220 Mich App 601, 608; 560 NW2d 354 (1996). A prosecutor "is free to argue the evidence and any reasonable inferences that may arise from the evidence." *People v Ackerman,* 257 Mich App 434, 450; 669 NW2d 818 (2003). Simply put, the prosecution's comments in this case did not "so infect[] the trial with unfairness as to make the resulting conviction a denial of due process." *People v Lane*, 308 Mich App 38, 62-63; 862 NW2d 446 (2014) (internal quotation omitted).

During her closing argument, the prosecutor mentioned Green's guilty plea, stating as follows:

> Now, [Detective Moore] also talked a little bit about DNA found on the 7.62s and what's interesting about that is that there was only two types of shell casings found there.

> We know that there were two shooters because one of them has already pled guilty to assault with intent to murder and it was his DNA that was on the bigger gun or the bigger shell casings that came from the bigger gun that everybody said that they saw Rashad with.

There was no objection to this argument.

Defense counsel then commented on both defendant's and Green's intent during his own closing argument, stating:

> So chapter two is where I labeled intent to kill. Listen to me, neither Mr. Wilson or Mr. Green had the intent to kill anyone. Their intent was to protect themself [sic]. That's exactly what it was. There was no intent to kill.

In her rebuttal remarks, the prosecutor responded to defense counsel's remarks by again commenting on Green's guilty plea, and also commenting on Dontez's guilty plea,[5] stating:

---

[5] Defendant does not challenge the evidence or the prosecutor's commentary regarding Dontez's plea agreement.

He [defense counsel] told you that Mr. Wilson and Mr. Green did not intend to kill. That is also the opposite of what is in evidence.

What is in evidence is that Rashad Green pled guilty to assault with intent to murder. Not self-defense, not anything else. Assault with intent to murder. That is what he pled guilty to.

Dontez Thomas pled guilty to accessory after the fact of murder. Now, he told you about something about how there was some sweet deal for Mr. Thomas.

That is not true. What he was charged with were the crimes that we believe that he committed, that—what we believe the evidence showed.

And he pled guilty to the more serious offense, the accessory after the fact for reloading the firearm and kicking in the door and hiding the guns.

The prosecutor thus first referred to Green's guilty plea when discussing that the evidence showed that there were two different shooters because two different types of shell casings were found at the scene. The prosecutor remarked that Green's DNA was found on one of the larger shell casings, which was associated with the type of weapon that witnesses described was possessed by Green, and that Green had already pleaded guilty of assault with intent to murder, thereby establishing that he was one of the shooters. This limited commentary did not urge the jury to consider Green's guilty plea as substantive evidence of defendant's guilt. The prosecutor merely argued that the evidence showed that there were two shooters and that Green's plea, along with other evidence, identified Green as one of the shooters. The prosecutor did not explain or otherwise suggest in her challenged remarks how Green's guilty plea either identified defendant as the other shooter or was substantive evidence of defendant's guilt.

The other reference to Green's guilty plea occurred during the prosecutor's rebuttal argument. By that time, defense counsel had argued that neither defendant *nor Green* acted with an intent to kill. In direct response to that argument, the prosecutor pointed out that "[w]hat is in evidence is that Rashad Green pled guilty to assault with intent to murder. Not self-defense, not anything else. Assault with intent to murder." These remarks must be considered in their responsive context. It would have been improper to argue that Green's guilty plea should be considered as substantive evidence that defendant acted with an intent to kill. But that is not what the prosecutor argued. Instead, the prosecutor merely responded to defense counsel's argument that Green did not act with an intent to kill by pointing out that Green had already pleaded guilty of assault with intent to commit murder. Considering the limited nature and responsive context in which these remarks were made, they were not clearly improper. *Kennebrew*, 220 Mich App at 608. Moreover, defendant has not established that a timely instruction could not have cured any prejudicial effect from the prosecutor's remarks. *Ackerman*, 257 Mich App at 449. As the majority notes, the trial court did instruct the jury that the lawyers' statements and arguments are not evidence. I find this instruction sufficient to alleviate any prejudicial effect from the prosecutor's limited and responsive comments. Considered in context, the majority is simply wrong to find plain error affecting defendant's substantial rights.

The majority also errs, in my judgment, by concluding that defense counsel was ineffective for not objecting to the prosecutor's remarks. To establish that defense counsel's performance was deficient, defendant must overcome a strong presumption that counsel's performance constituted sound trial strategy. *People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001). This Court will not substitute its judgment for that of counsel regarding trial strategy. *People v Davis*, 250 Mich App 357, 368; 649 NW2d 94 (2002). Failure to advance a meritless argument or raise a futile objection also does not amount to ineffective assistance of counsel. *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).

The majority acknowledges that the prosecutor "did not directly argue that Green's guilty plea should be considered as substantive evidence." Yet it posits that "the prosecutor wrongfully suggested that the jury could consider the plea as substantive evidence of defendant's guilt," that "the suggestion was strongly implied," and that "the prosecutor suggested that Green's guilty plea identified defendant as the other shooter, and was thus substantive evidence of defendant's guilt." Further, the majority states that "the prosecutor essentially argued that Green's guilty plea shows that he admitted to acting with an intent to kill, and that he did not act in self-defense," and that the "logical conclusion to be drawn from these statements is that defendant, who was with Green and fired a gun at the victim's car during the shooting, also acted with an intent to kill, rather than in self-defense." These assertions are the sole basis on which the majority finds plain error, both with respect to the prosecutor's arguments and with respect to defense counsel's failure to object.

But the "logical conclusion" reached by the jury flowed not from any "suggestion" or "implication" by the prosecutor or by any argument that the prosecutor may have "essentially" made. Rather, it flowed from the overwhelming evidence of defendant's guilt, which the majority wholly ignores. As the majority acknowledges, defendant must show more than plain error; he must also show that the error affected his substantial rights. *Carines*, 460 Mich at 763-764. Generally, in cases involving prosecutorial misconduct, "where a curative instruction could have alleviated any prejudicial effect we will not find error requiring reversal." *Ackerman*, 257 Mich App at 449. The majority gives lip service to that general rule, but side-steps it by mischaracterizing the prosecutor's closing argument as "urg[ing] the jury to conclude that if Green pleaded guilty, then defendant must also be guilty."

But that is an unfair characterization. The defense in this case conceded that defendant had shot Murphy, but maintained that defendant acted in self-defense because he believed that the occupants of the other vehicle were members of the College Street Boys gang. Dontez's testimony supported the defense theory that defendant believed that he had been confronted by the gang's members. As explained earlier, the prosecutor's initial reference to Green's plea occurred in the context of arguing that the evidence showed that there were two shooters and that Green's plea, along with other evidence, identified Green as one of the shooters, facts that were not disputed by the defense. The prosecutor did not explain or otherwise suggest in her remarks how Green's guilty plea either identified defendant as the other shooter, a fact the defense did not contest, or should be considered as evidence of defendant's guilt.

Also, as already explained, the other reference to Green's guilty plea occurred in the context of responding to defense counsel's argument that *Green* did not act with an intent to kill by pointing out that Green had already pleaded guilty of assault with intent to commit murder. Significantly, the prosecutor did not argue that Green's guilty plea should be considered as

substantive evidence that defendant also acted with an intent to kill.[6] Considering this context, even if defense counsel could have objected to the prosecutor's remarks, defendant is unable to establish that he was prejudiced by counsel's failure to object.

This case is similar to *Kincade*, 192 Mich App at 84-86, which also involved a claim of self-defense. This Court recognized that there may be a logical reason for offering proof of a codefendant's guilty plea when the jury is asked to evaluate a self-defense theory. *Id.* Thus, to the extent that the prosecutor used the evidence of Green's guilty plea to refute any claim of self-defense, such use would not be improper. *Id.* In subsequent proceedings in *Kincade* ("*Kincade II*"), the United States Court of Appeals for the Sixth Circuit rejected the defendant's argument that he was prejudiced by his counsel's failure to object to the alleged substantive use of his codefendant's guilty plea, explaining:

> Kincade also claims that trial counsel was ineffective because he failed to object to the use of Thomas's guilty plea, which was improperly employed by the prosecutor as substantive evidence of Kincade's guilt. We have held that "a failure to object to prosecutorial misconduct can amount to ineffective assistance of counsel." *Hodge v. Hurley*, 426 F.3d 368, 377 (6th Cir.2005) (citing *Gravley v. Mills*, 87 F.3d 779, 785-86 (6th Cir.1996)). To succeed on this claim, Kincade needs to establish that prosecutorial misconduct has taken place, that his trial counsel's failure to object to it was deficient, and that this failure prejudiced the defense.
>
> During opening statements, the prosecutor described Thomas's plea bargain, emphasizing that "while Thomas was getting 'something out of it [i.e. testifying against Kincade],' he was also a person who 'did something wrong' but was going 'to face up to it.' " *Kincade*, 412 N.W.2d at 253. The prosecutor questioned Thomas extensively about the plea at the beginning of Thomas's direct testimony, to which Kincade's attorney did not object; instead, the attorney inquired about the reduced charge and "suggested that Thomas' guilty plea was 'no big deal' because he had violated his parole and likely would have gone to prison anyway." *Ibid*. Thomas's plea agreement was introduced as an exhibit without objection from defense. During closing arguments, the prosecutor sought to impress on the jury the import of Thomas's plea. If Kincade acted in self-defense, the prosecutor asked,

---

[6] Although the majority all but concludes that the jury must have assumed defendant's guilt from the fact of Green's guilty plea, there is no argument that the jury was improperly instructed on the elements of self-defense, reasonable doubt, and the necessity that the prosecution establish each element of the charged offense. The fact that another person at the scene pleaded guilty to similar charges without asserting the defense of self-defense is neither necessary nor sufficient to establish any element of the charges against defendant. Jurors are generally presumed to follow their instructions, and those instructions are presumed to cure most errors. *People v Zitka*, 335 Mich App 324, 348; 966 NW2d 786 (2020). I see no reason to deviate from that presumption in this case.

Thomas too would have a defense—he was "helping someone defend himself"—and would not "book [ ] the next five years in prison." *Id*. at 84, 412 N.W.2d 252.

We have explained that although guilty pleas of co-conspirators or co-defendants "are never admissible as substantive evidence of the defendant's guilt," they "may be introduced into evidence if the co-conspirator or co-defendant testifies at trial, so that the factfinder will have appropriate facts on hand to assess the witness's credibility." *United States v. Sanders*, 95 F.3d 449, 454 (6th Cir.1996) (internal citations omitted). Kincade maintains that the prosecution went beyond mere disclosure of the plea bargain for the purposes of establishing Thomas's credibility and used his guilty plea as substantive evidence of Kincade's guilt by association. This impropriety prejudiced the outcome of the trial, Kincade argues—all the more so in view of the trial court's failure to give "cautionary instructions" as required by this circuit's law. *Sanders*, 95 F.3d at 454 ("When a guilty plea . . . is introduced into evidence, the . . . court is required to give a cautionary instruction to the effect that the jury may use the conviction or guilty plea only to determine the testifying witness's credibility.").

We need not decide whether the prosecutor's use of Thomas's guilty plea constituted prosecutorial misconduct or whether Kincade's trial counsel was deficient in failing to object to its use. See *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052 (stating that courts need not address both components of the inquiry "if the defendant makes an insufficient showing on one"). Even if we assume that trial counsel was deficient in not objecting to the prosecutor's tactics, Kincade has not established prejudice under *Strickland*. *Strickland*'s prejudice inquiry requires the court to "consider the *totality* of the evidence before the judge or jury." 466 U.S. at 695, 104 S.Ct. 2052 (emphasis added). "[T]he prejudice determination," as we clarified, "is necessarily affected by the quantity and quality of other evidence against the defendant." *Hodge*, 426 F.3d at 376. In this case, the quantity and quality of other evidence against Kincade substantially and unambiguously outweighs any evidence for his self-defense theory.

Kincade admitted shooting Taylor. The only issue at trial was whether the shooting was in self-defense. Kincade was the only one to testify in his own defense, claiming that he thought Taylor reached for his gun and that Kincade picked up and kept Taylor's gun after the murder. The police could not find the gun and Kincade could not produce it. Nor could Kincade proffer any evidence, aside from his own testimony, that Taylor made any threatening movements. Kincade's self-defense theory was contradicted by Thomas, who testified that Kincade said that he shot the wrong person and would not get paid, and Branham, who stated that Taylor was not armed. In view of the totality of the evidence, Kincade cannot show that but for his attorney's failure to object to the use of Thomas's guilty plea, there was a reasonable probability that the jury would have harbored reasonable doubt regarding his guilt. Therefore, we affirm the district court's determination that this claim does not warrant granting the writ of habeas corpus. [*Kincade v Wolfenbarger*, 324 Fed Appx 482, 493-494 (CA 6, 2009), cert den 559 US 907; 130 S Ct 1287; 175 L Ed 2d 1080 (2010).]

As in *Kincade II*, the quantity and quality of other evidence against defendant in this case "substantially and unambiguously outweigh[ed] any evidence for his self-defense theory."  *Id*. at 494.[7]  In view of the totality of the evidence, defendant cannot show that but for the prosecutor's arguments and defense counsel's failure to object, any error prejudiced defendant by affecting the outcome or seriously affecting the fairness, integrity, or public reputation of the judicial proceedings independent of defendant's innocence.  *Carines*, 460 Mich at 763-764.

For all of these reasons, defendant has not established a plain error affecting his substantial rights.  *Abraham,* 256 Mich App at 274-275.  Accordingly, I would affirm the jury's verdict and defendant's convictions, and respectfully dissent.

/s/ Mark T. Boonstra

---

[7] The decisions of lower federal courts are not binding on this Court, but may be persuasive. *People v Bosca*, 310 Mich App 1, 75 n 25; 871 NW2d 307 (2015).